COTHRAN & CO. *v.* THE WESTERN UNION TELEGRAPH CO

Contracts for fictitious or option " futures," made in Georgia, being illegal, whether between principal and principal, or broker and principal, where both parties are in complicity touching the unlawful purpose, such contracts, or the loss or gain resulting from them, cannot be invoked to measure the damages sustained by the sender of a telegram in consequence of a mistake made by the company in transmitting the message.   If the *Tel. Co.* v. *Blanchard,* 68 *Ga.* 299, is to be regarded as involving a Georgia contract respecting transactions in " futures," it stands overruled in principle by the *Bank* v. *Cunningham,* 75 *Ga.* 366.

May 13, 1889.

Contracts.   Futures.   Damages.   Telegraph companies.   Before Judge MADDOX.   Floyd superior court. September term, 1888.

Cothran & Co. sued the Western Union Telegraph Co., in a magistrate's court, for damages alleged to have

been sustained by the omission, by the carelessness of
defendant's agent, of the word " sell " from the follow-
ing telegram :

"Check.   6 P. M.   30 paid Mch.          ROME, Ga., 10 Mch., 1887.
(8) *To S. H. Phelan, Atlanta, Ga.:*
Close hundred barrels May pork continue instructions remainder
sell fifty bags June coffee all to days close close four thousand bushels
short May wheat if reaches eighty two three quarters or eighty.
                                    C. H. COTHRAN & Co."

The case was taken by appeal to the superior court.
On the trial there, the plaintiffs introduced the original
telegram, copied above. Also James Cothran, one of
plaintiffs, who testified, in substance, as follows : The
telegram was given by him to an operator of defendant
on the day it bears date, for transmission to Phelan,
but was not properly sent. Plaintiffs were damaged in
this way: On March 4th, 1887, they sold fifty bags of
coffee at 12½ cents per pound, and on March 10th,
1887, it had advanced to .1295 ; so they wished to sell
fifty bags more, and sent the telegram. The defendant
omitted the word "sell" and the word "close" included
the coffee also, so that instead of having fifty bags of
coffee sold fifty bags were closed out. The actual loss
on the coffee by this transaction was $32.50, besides
$10.00 paid for commissions and thirty-seven cents for
the telegram, and all this loss occurred because of the
error in sending the telegram. Plaintiffs did not know
of the error until about March 16th, 1887, for though
they received the advice about Phelan closing instead
of selling before that time, they supposed it was an
error which had occurred in Phelan's office and which
he would be responsible for. Witness does not remem-
ber what changes there were in the market then, as
some time has elapsed and prices may have fluctuated
wildly. As soon as plaintiffs found out certainly, they
took action to correct the mistake; and they were
damaged as above stated. This loss was charged to

their account.   Does not remember whether Phelan failed soon after, but he owed them money when he did fail.   As to settlements with Phelan, every night plaintiffs would run up their account and would see what the state of it was, and if he owed them they would draw on him, and if they owed him they would remit, daily if necessary.   Never had any strictly money transactions with Phelan for everything done was by draft; it was the same thing as money.   This matter was balanced on their books long before Phelan failed.   Their transactions with him in two days would have been more than enough to wipe out this transaction, being for frequently $2,500.00 per day.

It was admitted that a demand had been made on the proper representatives of the defendant for the amount claimed by plaintiffs, according to law.   Defendant moved for a nonsuit, on the ground that the basis of the suit is a contract dealing in futures, that there was no property in hand and that it was to be settled by paying the difference when the day of judgment arrived; insisting that it is a gaming contract and that, under the law, there can be no recovery.   The motion was sustained, and plaintiffs excepted.

C. ROWELL, for plaintiffs.

BIGBY & DORSEY and H. M. REID, for defendant.

BLECKLEY, Chief Justice.

The facts in detail will be found in the official report. It is quite apparent from the face of the dispatch, and from the evidence on the trial, that the transaction contemplated by the senders of the dispatch was a dealing in "futures."   The court below, so construing the evidence, granted a nonsuit, and we are called upon to say whether that disposition of the case was correct. We think it was.   It may be that on account of the error in transmitting the dispatch, the plaintiffs would

be entitled to recover what they paid for the transmission,—that is, the compensation the company received for the telegram ; but there is no indication in the record that the court below was called upon to decide this narrow question.  On the contrary, the whole tenor of the record is to the effect that the plaintiffs claimed their full damages, and sought to measure the same by the market changes, thus resorting to the fluctuations in "futures" in order to arrive at the amount of their recovery.  We think this standard cannot be invoked, for the reason that contracts relating to "futures" are illegal, and we see not how an illegal contract can be called in to measure the damages sustained by reason of the breach of a legal contract.  It is true that according to the *Telegraph Company* v. *Blanchard*, 68 *Ga.* 299, a recovery in this case might be had; but that decision was made at a time when contracts between brokers and their principals were considered obligatory, notwithstanding the vitiating element of speculation in "futures"; but since the case of *Bank* v. *Cunningham*, 75 *Ga.* 366, the principle of the former case has stood virtually overruled.  Besides, the question in 68 *Ga.* related to a broker in the State of New York, whereas the broker in the present case was located in this State. His contract with his principal was a Georgia contract. We think the court did not err in granting a nonsuit.

Melchert *v.* Amer. Union Tel. Co., 11 Fed. Reporter, 193 and notes.                *Judgment affirmed.*