## GIST v. TELEGRAPH CO.

1. NONSUIT—CONTRACT IN "FUTURES"—TELEGRAPH COMPANY—REV. STAT., 1859, 1860.—A complaint for damages for the failure of a telegraph company to deliver a message relating to transactions in "cotton futures" in the cotton exchange in New York city, which does not allege all the facts enumerated in sec. 1859 of Rev. Stat., as necessary to render valid a contract for purchase or sale of cotton to be delivered in the future, does not state a cause of action.

2. CONFLICT OF LAWS—COURTS.—A contract valid in the State where it was made and is to be enforced will not be treated as valid by the courts of another State, the laws of which declare such a contract invalid.

3. IBID.—The validity or invalidity of a transaction is to be determined by the laws of the forum in the absence of allegation and proof of what the *lex loci contractus* is.

4. IBID.—If contracts for the sale of "futures" are declared in this State *contra bonos mores*, no principles of comity will require the courts of this State to recognize such contract as valid, even though it be so held in the State in which it is to be performed.

Before ALDRICH, J., Newberry, April 11, 1895. Reversed.

Action by Nathaniel Gist against Western Union Telegraph Company by the following complaint:

I. That the defendant is a body corporate and politic, and as such is capable of suing and being sued in said State.

II. That the said defendant is engaged in transmitting messages by way of telegraphy from Newberry Court House, in said State and County, to the city of New York, in the State of New York, and from the said city of New York to the said Newberry Court House, receiving pecuniary compensation for their services from the parties sending and receiving said messages.

III. That on the 15th day of January, 1894, the plaintiff engaged the defendant to transmit to the said city of New York the following message to the firm of Roddy & Watts, composed of John T. Roddy and David C. Watts, and doing business in said city: "Close out April sold twenty-six and buy two Marches," which meant to buy 300 bales of cotton, to be delivered in April, 1894, and 200 bales to be delivered in March, 1894, in the city of New York. These purchases being made to protect himself from loss by reason of other transactions in cotton.

IV. That the said firm of Roddy & Watts did, on the said 15th day of January, 1894, receive the said message, and bought for the plaintiff 200 bales of cotton, to be delivered to the plaintiff, in the city of New York, in the month of March, 1894, at the price of $8.24 per 100 pounds, and 300 bales, to be delivered to the plaintiff, in the same city, in the month of April, 1894, at the price of $8.32 per 100 pounds.

V. That immediately after the said purchase, the said Roddy & Watts, on the said 15th day of January, 1894, in the said city of New York, delivered to the defendant, to be transmitted to the plaintiff over its telegraph wires, the following message, to wit: "Bought three Aprils thirty-two, and two Marches twenty-four, steady;" and which said message was signed by Roddy & Watts, but was not delivered to the plaintiff until after the close of business hours on the 18th day of January, 1894, although it could and should have been delivered to the plaintiff at Newberry, S. C., during business hours on the 15th day of January, 1894. And that the defendant knew that the said firm of Roddy & Watts were cotton brokers, doing business in the said

city of New York, and engaged in the buying and selling of cotton for parties desirous of speculating on the same on the New York Cotton Exchange, located in the city of New York. The defendant well knew that the plaintiff dealt in buying and selling cotton through cotton brokers, subject to the rules governing said cotton exchange.

VI. That it was the duty of the defendant to have transmitted said last mentioned message to the plaintiff on said 15th day of January, 1894, and by its utter negligence and carelessness failed to do so on that day, and plaintiff did not receive said message until after the close of business hours on the 18th day of January, 1894.

VII. That immediately after the said purchase for the plaintiff, cotton began to decline in price, and the plaintiff, in order to protect himself against loss from other purchases made by him in the same manner, sold an equal amount of cotton, to be delivered in the said city of New York, thereby indemnifying himself against any loss, and would have pursued the same course in reference to said purchase had the defendant promptly delivered the said last mentioned message.

VIII. That if the defendant had transmitted to the plaintiff promptly the said message of Roddy & Watts, sent on the 15th day of January, 1894, the plaintiff would thereby have been enabled to protect himself from any loss, by selling, as he did in the other cases, an equal amount of cotton, to be delivered in the said city of New York, and would then have avoided the loss sustained by him by reason of the negligence of the defendant, which loss was sustained in the manner aforesaid in the sum of $1,520.

IX. That by reason of the said negligence of the defendant, it has damaged the plaintiff in the sum of $1,520, in that said cotton continued to decline until the months of March and April, 1894, and after the 19th day of January, 1894, to wit: On the 22d day of January, 1894, 500 bales of cotton was sold for the plaintiff, to protect said loss, which amounted on said last mentioned day to $1,520. In this

way, 300 bales, to be delivered in April, 1894, and 200 bales, to be delivered in March, 1894, in New York City, under the same rule; and cotton continued to decline, and if the sales had been made after the 22d day of January, 1894, for said months, the loss would have been still greater. And that even if the said 500 bales of cotton had been sold on the 19th day of January, 1894, the said loss would have amounted to $1,520, which was the earliest day that the plaintiff could have protected himself after receiving the said message of Roddy & Watts.

X. That within sixty days after the said 15th day of January, 1894, the plaintiff notified the defendant of the said loss in writing, and demanded of the defendant that it would make good said loss, which demand was refused.

Wherefore, the plaintiff demands judgment against the defendant for the sum of $1,520, with interest from the 15th day of January, 1894, and the costs of this action.

To this complaint the defendant interposed a demurrer, which is substantially set out in the opinion of the Court. The following is the decree of the Circuit Judge:

This action comes before me upon the complaint therein and a written demurrer thereto, upon the ground that it does not state facts sufficient to constitute a cause of action. The truth of every allegation in the complaint, properly pleaded, in so far as the issues under consideration are involved, is admitted. The complaint is quite long, and the demurrer states seven grounds of attack thereon. Neither time nor space will permit a recital *in extenso* of these pleadings, and they must be read and considered as a part of this decree. Omitting legal phraseology and briefly stating the substance of the allegations to be considered, and merely for the purpose of understanding the issues raised, the complaint charges: that the defendant, a telegraph company, was engaged in sending telegraphic despatches to and fro between Newberry, S. C., and the city of New York, N. Y.; that "the defendant knew" that Roddy & Watts were a

firm of cotton brokers, doing business in New York City, and engaged in the buying and selling of cotton for parties desirous of speculating on the same on the cotton exchange, located in said city; that defendant *well knew* that plaintiff then dealt in buying and selling cotton through cotton brokers, subject to the rules governing said cotton exchange; that on January 15th, 1894, plaintiff engaged defendant to transmit to said Roddy & Watts, in New York, the following message, signed by plaintiff, and to be sent from Newberry, S. C., viz: "Close out April sold twenty-six and buy two Marches," which meant to buy 300 bales of cotton, delivered in April, 1894, and 200 bales, to be delivered in March, 1894, in the city of New York; that these purchases were made to protect himself from loss by reason of other transactions. On the same date, January 15th, 1894, Roddy & Watts bought the cotton as directed by plaintiff in his message to them, and immediately, on the 15th, delivered to defendant, in New York, the following message, to be delivered to plaintiff, in Newberry, S. C., to wit: "Bought three Aprils thirty-two and two Marches twenty-four steady." That defendant did not deliver said last mentioned message to plaintiff in Newberry until after the close of business hours on January 18th, 1894, although it could and should have been delivered to plaintiff in Newberry during business hours on January 15th, 1894; that their failure to transmit and deliver said message was caused by the "utter negligence and carelessness" of the defendant; that by reason of said failure, plaintiff was damaged in the sum of $1,520. The complaint also alleges, that on January 15th, 1894, the price of cotton began to decline, and continued to do so; that plaintiff could and would have protected himself on said purchase of January 15th, by selling an equal amount of cotton, to be delivered in New York, at the time the cotton he had bought was to be delivered to him, if he had received the said telegram from Roddy & Watts at the time it should have been delivered; that on January 22d, 1894, plaintiff sold 500 bales of cotton in New York at an

actual loss of $1,520; that the loss would have been the same if he had sold on the 19th, and that he was forced to sell at this loss to prevent still greater loss.

The complaint, in its last analysis, means, that if plaintiff had received the telegram from Roddy & Watts on January 15th, as he should have received it, and been thereby informed that his order had been executed, he could and would have sold cotton, as an offset to this purchase, the price declining, and averted this loss, but that defendant's failure to deliver the telegram until the 18th, kept the plaintiff in ignorance of his said purchase for three days, and that on the 19th, when he was first in a position to avert loss, he had already lost $1,520; and that by his sale on the 19th he averted further loss.

The first, second, and third grounds of the demurrer refer to, and are based upon, the act of this State of 1883, 18 Stat. at Large, 454, and incorporated in the Rev. Stat., 1893, as section 1859, *et seq.*, under the caption of "Contracts of sale for future delivery," as follows: "Section 1859. Every contract, bargain, or agreement, whether verbal or in writing, for the sale or transfer at any future time * * * of any cotton, * * * shall be void, unless the party contracting, bargaining, or agreeing to sell or transfer the same is, at the time of making such contract, bargain, or agreement, the owner or assignee thereof, or is at the time authorized by the owner or assignee thereof, or his duly authorized agent, to make and enter into such contract, bargain, or agreement, or unless it is the *bona fide* intention of both parties to the said contract, bargain, or agreement, at the time of the making of the same, that the said * * * cotton * * * so agreed to be sold and transferred shall be actually delivered in kind by the party contracting to sell and deliver the same, and shall be actually received in kind by the party contracting to receive the same at the period in the future mentioned and specified in said contract, bargain, or agreement.   Sec. 1860. In any and all actions brought in any court to enforce such contract, * * * the burden of

proof shall be upon the plaintiff to establish" that the contract is in conformity with the provisions of sec. 1859. Sec. 1861 authorizes any person who has paid money on any contract of sale for future delivery of cotton, &c., to sue for and recover the same from the party to whom it was paid. If the contract was in violation of the provisions of the act, and in such action, "the oath of the loser, that he has actually paid over the money to the party against whom the action is brought, shall be regarded a *prima facie* establishing the case against such party."

The only decision in this State which refers to this subject is that of *Williams, Black & Co.* v. *Connor*, 14 S. C., 621, in which Chief Justice McIver, in delivering the opinion of the Court, says: "This Court cannot assume that a purchase of cotton futures is a gaming contract, when there is no evidence in the case which shows it to have been so." It is true, that this opinion, rendered in 1881, and prior to the enactment of the law under consideration, cannot be applied to the provision of the act, or as affording us any aid in construing the terms thereof, but, in two respects, it throws a flood of light upon the subject-matter of the act. First, and in direct terms, it reiterates, and with emphasis, the old rule, that, in the absence of evidence, a court cannot assume that a citizen has violated the law, and, secondly, by way of inference, what the old law was.

The first ground of demurrer is predicated upon the theory that, under sec. 1859, contracts for the sale of cotton, to be delivered in the future, are void, unless certain of the conditions enumerated in said section, involving facts and intent, exist, and that section 1860 impose upon the plaintiff, in an action brought upon such a contract, the burden of proving the existence of the said conditions; and, therefore, a complaint, the object of which is to enforce such a contract, must contain apt allegations, alleging the existence of said condition. Upon this theory, it is submitted that the complaint in this action is defective, in that it omits allegations setting forth the existence of the condi-

tions enumerated in said section. The second and third grounds of demurrer are based upon the assumption that it appears upon the face of the complaint that the contracts therein referred to are in violation of the terms of the said act. If this view is correct, and the defendant has the right to raise these issues, a subject I will have something to say upon further on, then, if the complaint is open to attack in the manner above indicated, the demurrer should be sustained. I cannot concur with the learned counsel for defendant, either in his construction of the statute or in his reading of the complaint.

Without going into the subject of dealing in futures, gambling upon the prospective market price of an article, upon which so much has been said and written, it is sufficient to say that the law of this State makes such transactions illegal and void. But the act of this State does not make all sales of cotton, &c., to be delivered in the future, void; on the contrary, if these sales are *bona fide*, made in due course of trade, and do not violate said statute, they are legal and valid. The pernicious practice of dealing in futures has been legislated against in many of the States, South Carolina among the number; but no State, so far as I am aware, has attempted to prohibit the sale of goods for future delivery, if such sale is *bona fide* and in due course of trade. A law prohibiting such sales, it is contended, and with apparent reason, would be unconstitutional. In my opinion, our statute upon this subject recognizes and permits sales of cotton for future delivery, if made *bona fide*, in due course of trade, and the contract does not violate its terms. The vice legislated against is gambling upon the future price of cotton, &c. Even in a criminal court the presumption is that the citizen is innocent until his guilt is duly proven. The law, though not in terms referred to, becomes part and parcel of every contract entered into in this State, and the citizen, in the absence of proof, or, at least, of a charge of violating the law, is presumed to be law-abiding—that his contracts are in conformity to and sanctioned by the law.

It is hard to conceive of a general assembly enacting a law which places the citizen under the ban of suspicion, which requires him to incorporate in a complaint exhibited in a court of justice, allegations setting forth his obedience to law, and this, too, in a business transaction recognized as legal by the General Assembly. I do not think that such is the purpose of the legislature, nor will the act in question warrant such a construction. I am aware that acts of the General Assembly render certain contracts void. On the opposite page of the Rev. Stat. of 1893 to that which contain the act of 1883, sec. 1859, will be found the old act of 1793, as sec. 1857, which declares that all notes, &c., the consideration of which is money, &c., won at gaming, "shall be utterly void, frustrate, and of none effect." This is the law, and yet no one ever supposed, when suing on an ordinary note, that it was either necessary or proper to allege facts tending to show that the note was not in violation of the gambling act. A note regular upon its face is presumed to be valid; if it is invalid, then that invalidity is a matter for defendant to show. I am also aware that the General Assembly can and frequently has enacted laws changing the rules of practice and evidence, shifting the burden of proof as to certain facts from one party to another, and this, too, in contravention of the rules of the common law and the practice in this State. As I have said, the act of 1883 permits the sale of cotton, to be delivered at a period in the future, and I think that a complaint which states such a contract is sufficient, that the proper and legal presumption is that such contract is in conformity to the act, and that allegations showing that the contract complies with the law are unnecessary. If in an action to enforce such a contract the defendant, in his answer, alleges that the contract is in violation of the act, and states wherein it is illegal, then, under sec. 1860, the burden of proof is upon the plaintiff to establish the fact that the contract is within the provisions of the act of 1883. This seems to me to be the fair and natural construction to be placed upon the act, and in con-

forming with the spirit of the third section of the act, sec. 1861 of the Rev. Stat. 1893, wherein it is provided that the oath of a party that a contract violates the act, shall be regarded as *prima facie* establishing the charge.

Next, if we turn to the complaint, we will find upon the face thereof that every alleged sale or purchase of cotton is of cotton "to be delivered" to the seller or buyer in New York—that means an actual delivery, includes the allegations of the *bona fide* intent so to do, and is in conformity with the act. These dealings, says the complaint, were subject to the rules governing the New York Cotton Exchange. I do not know the nature of these rules, but that does not authorize the Court in the absence of evidence to presume that they are illegal. The Supreme Court of the United States, in *Bibb* v. *Allen*, 149 U. S., 481, in speaking of these rules and regulations, say: "It is shown that the rules and regulations of the New York Cotton Exchange recognize no contracts except for the sale and purchase of cotton to be actually delivered. These rules and regulations impose upon the seller the obligation to deliver the cotton sold and upon the purchaser to receive it. This allegation becomes more important when the plaintiff contends that the law of New York should govern in the construction of the contract stated in the complaint. 8 Am. & Eng. Enc. of L., p. 1020. The contracts for the sale and purchase of the cotton set out in the complaint were made in New York, and were to be performed there; therefore, the cause of action, so far as the contracts are concerned, arose there. *Tillinghast* v. *Boston Co.*, 39 S. C., 484. The defendant, at most an agent, can not interpose a defense of dealing in futures. That defense has reference to the parties buying and selling. 8 Am. & Eng. Enc. of L., 1014. This, too, I think, is a fair construction of our act. I have, in discussing the issues, endeavored to construe the act, so far as it was necessary, not upon the ground that the defendant had a right to interpose a defense of dealing in futures to plaintiff's action in the same manner and with the same right that a party to the contract would

23-45

have, but upon the ground that a proper construction of the act may be necessary to determine the question whether or not the defendant is liable in damages, and if so, to what extent. For the reasons stated, and others to be given, these grounds of demurrer are overruled.

By reference to the original demurrer it will be seen that the fourth ground raises the issue whether or not the complaint alleges that the defendant's negligence was the proximate cause of plaintiff's loss. The fifth ground raises the question of remote, uncertain, and speculative damages, and the sixth ground makes the point that the complaint fails to show that the plaintiff has sustained any loss. The plaintiff in his complaint alleges that he has lost $1,520. The demurrer admits that fact. That shows loss—nothing remote, uncertain or speculative about that. When a person delivers a message to a telegraph company to be sent over its wire, he expects it to be sent and delivered quickly and accurately. That is what a telegraph company, for a valuable consideration, contracts to do. It must, therefore, be assumed that the parties have the right to rely upon the good faith and diligence of the company, and the corollary of that proposition, that the company is obliged to use due diligence and good faith, is equally true. If the company fails through its "utter neglect and carelessness" to comply with the contract, it is liable for such failure; certainly it is bound to refund the money received under the contract.

In this case plaintiff is not suing defendant for the price paid for the telegram; he goes further, and seeks to recover damages of defendant for an alleged injury and loss arising from the delayed delivery thereof. The complaint alleges that defendant knew that Roddy & Watts as cotton brokers were engaged in buying and selling cotton for plaintiff in New York and under his orders, according to the rules of the cotton exchange. Defendant knew, must have known, of the message from plaintiff to Roddy & Watts to buy cotton sent on 15th January, 1894, when on same day the telegram of Roddy & Watts to plaintiff, "Bought 3 Aprils

32 and 2 Marches 24 steady," was delivered to defendant to be sent to plaintiff, defendant knew that it was in answer to the telegram sent earlier in the day, and that it was intended to inform plaintiff of the purchase and the tone of the market price on that day. The special circumstances of the case, as stated in the complaint, were sufficient to advertise the defendant of the importance of the message. Sutherland on Damages, 3 vol., p. 310. Nor is it necessary that the company should be apprised of details, if the purpose of the message is known from surrounding circumstances. Suth. on Dam., 3 vol., p. 310. The failure of defendant to deliver the message of Roddy & Watts to plaintiff kept him in ignorance of his purchase and deprived him of the knowledge necessary for his protection. Defendant knew that this information was necessary to plaintiff as a dealer in cotton on the New York market. It is the law of trade for prices to fluctuate, rise and fall, and the good merchant is the one who can either anticipate these fluctuations or guard against loss by falling prices. This requires sound judgment and prompt action. If a merchant has bought a lot of cotton to be delivered in the future at a time fixed, and at an agreed price, and the price begins to decline, or the merchant apprehends that it will do so, he may sell, assign, and transfer his contracts to some one desirous of buying the cotton, if he can find such a purchaser, or he may sell a lot of cotton to be delivered at the time he is to receive his purchase at a price agreed upon, and in this way, or either of these ways, he can avoid loss. To deprive such a merchant of these rights, is doing him an injury likely to cause serious loss, and if the "utter negligence and carelessness" of another deprives him of these rights, then that other should make good the loss thus occasioned. The complaint, after alleging the long delay in delivering the telegram, that it was delayed by the "utter negligence and carelessness" of defendant, goes on and alleges, that if plaintiff had received said telegram at the time he should have received it, he could have averted the loss occasioned by the decline in the

price of cotton by selling cotton. He did sell cotton and prevent further loss, the complaint says. "Whenever a party sustains a loss which he could and would have prevented but for the negligence of the company, he is entitled to hold the company for it." Am. & Eng. Enc. of L., p. 854. The allegation of the complaint, judged by this law, certainly states a cause of action against defendant. If the purchase of the cotton was legal, plaintiff had the right to sell it; contracts for the sale of cotton to be delivered in the future, if legal, can be sold, assigned, and transferred. Am. & Eng. Enc. of L., vol. 20, p. 1009. Such sales and transfers are within the letter and spirit of the act of 1883, *supra*. These grounds of demurrer are overruled.

The seventh and last ground of demurrer is as follows: "This being an action for special damages, the complaint fails to state that defendant company has notice of the damage which would result to plaintiff, as alleged in the complaint." In the discussion of the other issues, I have also discussed this point, cited law, and referred to the allegations of the complaint, which, in my opinion, dispose of this point, but I will consider the proposition submitted in support of it. I shall not attempt to review the cases upon this subject or reconcile conflicting decisions, but will test this complaint by the law as found in one of our latest cases, viz: *Mood* v. *Telegraph Co.*, 40 S. C., 525. In that case, plaintiff, a physician, sued the telegraph company for damages for alleged negligence in the delivery of a telegraphic message, which caused the plaintiff "*not to realize a fee*" for professional services which otherwise he would have probably received. The words "*not to realize a fee*" are in italics, so written by the Supreme Court. The Court upon this statement say, page 527: "This being the state of the case, we incline to think that the complaint should have contained a distinct allegation that the defendant company or their agent had notice of the damage that would result to the plaintiff by the loss of a fee for professional services in case the message was not delivered with unusual prompt-

ness; and that the plaintiff was ready and willing to perform his part of the contract, but was prevented from so doing by the tardy delivery of the message." In the case at bar the action is for damages for the alleged negligence in the delivery of a telegraphic message, which caused the plaintiff an *actual loss* of $1,520. This is very different from the Mood case. If the allegation was that the alleged negligence in the delivery of the message caused the plaintiff *"not to realize"* profits which otherwise probably he would have received, this action might be insufficiently stated. In the complaint in the Mood case there is no allegation that the telegraph company or its agent had notice of any of the facts stated, and upon which the action for damages depended, save and except the negligent delivery of the message. In the case at bar the distinct allegation is that the defendant knew, even that the defendant "well knew," the nature of the business in which plaintiff was engaged; all of the facts are stated—that defendant had in its control, and knew the contents of, the message upon which cotton was bought for plaintiff; the defendant had in its possession the telegram of Roddy & Watts notifying plaintiff of the purchase; the defendant knew that plaintiff was engaged in buying and selling cotton on the New York Cotton Exchange; that prices fluctuated; therefore, the defendant knew, could not help knowing, that the telegram of Roddy & Watts to plaintiff, sent on the 15th January, 1894, was of special importance to plaintiff; knowing this, and admitting that the delay in the delivery of the message was caused by "utter negligence and carelessness," and with the distinct allegation in the complaint that, if the delay had not taken place, plaintiff could and would have prevented the loss, the complaint, in my opinion, is not defective. Again, plaintiff is not suing defendant, as Dr. Mood did, for not delivering the message "with unusual promptness" (40 S. C., 527), but for failing to deliver the message in a due and proper period.

The Supreme Court of this State, in the case of *Sitton*

v. *McDonald*, 25 S. C., 71, upon the authority of *Hadley* v. *Baxendale* (9 Exch., 341), states the law as follows: "That damages which would not arise in the usual course of things from a breach of contract, but which do arise from circumstances peculiar to the special case, are not recoverable unless the special circumstances are known to the person who has broken the contract." This statement of the law places the plaintiff at the greatest possible disadvantage and puts the defendant in the most favorable position, and yet, tested by this rule, which might be termed harsh, the complaint is sufficient. The authorities hold that the knowledge contemplated by the law does not consist in knowing of the actual contemplated loss or actual gain, but it need only consist in the knowledge of the "peculiar circumstances;" information which will put them upon inquiry notice; or, in other words applicable to this case, that the defendant knew the importance of the telegram to prevent loss. This is only a demurrer to the complaint, and, therefore, does not touch upon the facts. While it is necessary in the administration of justice that proper pleading should be exhibited in Court, and it is the duty and desire of the Court to enforce this salutary rule, still justice should not be clogged and hampered by mere technicalities. This is the law of this State, as sec. 180 of the Code provides that, "In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view of substantial justice between the parties;" and our highest Court has repeatedly held that a pleading must not be construed strongly against the pleader. *Childeem* v. *Verner*, 12 S. C. 1; *Wallace* v. *Lark*, *Ib.*, 579.

Wherefore it is ordered, adjudged, and decreed, that the demurrers of the defendant herein to the complaint herein, and each of the several grounds upon which said demurrer is based, be, and the same are hereby, overruled and dismissed; and it is further ordered, that defendant have leave to serve an answer to the complaint herein upon the plain-

tiff's attorneys within twenty days from and after notice of this decree, and the filing thereof, is served upon the defendant's attorneys.

From this decree the defendants appeal upon the following exceptions:

I. That his Honor erred in holding that the complaint stated facts sufficient to constitute a cause of action.

II. That his Honor erred in not sustaining the defendant's demurrer to the complaint.

III. That his Honor erred in not holding that the damages alleged, resulting from losses sustained by plaintiff upon a contract for the future delivery of cotton, the complaint should have stated that, at the time of making such contract, the party making the same was the owner or assignee of the cotton so agreed to be sold, or was, at the time, authorized by the owner or assignee thereof, or his duly authorized agent, to make and enter into such contract, or that at the time of making such contract, it was the *bona fide* intention of both parties thereto that the said cotton so agreed to be sold and transferred, should be actually delivered and received in kind by the said parties at the future period mentioned therein.

IV. That his Honor erred in not holding that it appeared from the face of the complaint, that the damages resulted from losses sustained by plaintiff upon a contract for the future delivery of cotton, and that at the time of making such contract it was not the *bona fide* intention of both parties thereto that the said cotton so agreed to be sold and transferred should be actually delivered and received in kind by the said parties at the future period mentioned therein.

V. That his Honor erred in not holding that it appeared, upon the face of the complaint, that the real intention of the said plaintiff, and of the parties with whom said alleged contracts were made, was to speculate in the rise and fall of said cotton, without any intention of delivering or receiving the same, but when actually called for to settle the difference

between the contract price and the market price, that is to say, a settlement on margins. That said contract was illegal and void, and cannot be made a legal ground for damages.

VI. That his Honor erred in not holding that the complaint fails to allege that the plaintiff has sustained any loss by reason of defendant's delay in delivering said message, the direct and proximate result of any act of the defendant in the premises.

VII. That his Honor erred in not holding that the damages alleged were remote, uncertain, and speculative.

VIII. That his Honor erred in not holding that the complaint fails to allege facts showing that plaintiff has sustained any damage, in that it is not stated what disposition he made of the cotton bought for March and April delivery or of the cotton sold for future delivery on January 22d, 1894.

IX. That his Honor erred in not holding that, this being an action for special damages, the complaint fails to state that the defendant company had notice of the damage which would result to plaintiff as alleged in the complaint.

X. That his Honor erred in holding that upon the face of the complaint every alleged sale or purchase of cotton was of cotton to be delivered to the seller or buyer in New York; that such allegations meant an actual delivery, included the allegations of a *bona fide* intent so to do, and were in conformity with the act.

XI. That his Honor erred in holding that the defendant was an agent of the parties to the telegram, and cannot interpose the defense of dealing in futures.

XII. That his Honor erred in holding that the complaint alleges that the dealings in cotton futures stated therein were subject to the rules of the New York Cotton Exchange.

*Messrs. Cothran, Wells, Ansel & Cothran,* for appellant.

*Messss. J. Y. Culbreath* and *Hunt & Hunt,* contra.

Oct. 11, 1895. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER.    This was an action to re-
cover damages for loss sustained by plaintiff by reason of
the negligence of the defendant company in the delivery of
a telegram sent to him by Roddy & Watts, of New York.
Inasmuch as the questions presented by this appeal arise
upon a demurrer to the complaint, upon the ground that
the allegations therein contained are not sufficient to con-
stitute a cause of action, it will be necessary to state, sub-
stantially, such allegations, though a copy of the complaint
should be embraced in a report of the case.    Omitting the
formal allegations of the corporate character of the defend-
ant company, and as to the nature of the business in which
it was engaged, the material allegations may be substan-
tially stated as follows: *First.* That plaintiff, on the 15th of
January, 1894, employed defendant to transmit by telegraph
a message to Roddy & Watts, in New York, instructing
them to buy for him 300 bales of cotton to be delivered in
April, 1894, and 200 bales of cotton to be delivered in March,
1894, in the city of New York, "these purchases being made
to protect himself from loss by reason of other transactions
in cotton." *Second.* That said order was executed by said
Roddy & Watts on the same day by the purchase of the
March cotton at $8.24 per 100 pounds and the April cotton
at $8.32 per 100 pounds.    *Third.* That on the same day, to
wit: the 15th January, 1894, the said Roddy & Watts deliv-
ered to the defendant company a message to be transmitted
by telegraph to the plaintiff, informing him of said purchase
on his account, which message was not delivered to the
plaintiff by defendant company until after the close of busi-
ness hours on the 18th January, 1894, although it could and
should have been delivered to the plaintiff at Newberry, S.
C., during business hours, on the 15th of January, 1894; and
that defendant well knew that said Roddy & Watts were
cotton brokers in the city of New York, engaged in buying
and selling cotton for parties desirous of speculating in the
same on the New York Cotton Exchange, and also knew
that plaintiff was engaged in buying and selling cotton,

24—45

through cotton brokers, subject to the rules governing said cotton exchange. *Fourth.* That the failure to deliver said telegraphic message to the plaintiff on the day of its date, as it was the duty of defendant company to have done, was due to the "utter negligence and carelessness of the defendant company." *Fifth.* That immediately after said purchases were made for the plaintiff by said Roddy & Watts, cotton began to decline in price, and the plaintiff, "in order to protect himself against loss from other purchases made by him in the same manner, sold an equal amount of cotton to be delivered in the said city of New York, thereby indemnifying himself against any loss, and would have pursued the same course in reference to said purchase had the defendant promptly delivered the said last mentioned message." *Sixth.* That by reason of the said negligence of the defendant company the plaintiff has been damaged in the sum of $1,520, "in that said cotton continued to decline until the months of March and April, 1894, and after the 19th day of January, 1894, to wit: on the 22d day of January, 1894, 500 bales of cotton was sold for the plaintiff to protect said loss, which amounted on said last mentioned day to $1,520, * * * and if the sales had been made after the 22d day of January, 1894, for said months, the loss would have been still greater, and that even if the said 500 bales of cotton had been sold on the 19th day of January, 1894, the said loss would have amounted to $1,520, which was the earliest day that the plaintiff could have protected himself after receiving the said message of Roddy & Watts." *Seventh* That within sixty days after the said 15th of January, 1894, the plaintiff demanded payment of said loss by defendant, which demand was refused. The defendant bases its demurrer upon the following specifications: 1st. That the alleged loss arising under a contract for the future delivery of cotton, the complaint was defective in failing to allege that the plaintiff was the actual owner of the cotton, or that at the time of making the contract it was the *bona fide* intention of both parties that the cotton should be actually delivered and re-

ceived in kind.    2d.  That it appears upon the face of the complaint that the parties did not intend an actual delivery, but that the transaction was a gambling one—a wager as to the rise or fall of the price of cotton—and as such could form no basis for an action for damage.    3d.  That the damages alleged are remote, speculative and uncertain, and are not the proximate consequences of defendant's negligence. 4th.  That no facts are stated in the complaint from which the damages claimed can be inferred, inasmuch as it is not stated what disposition was made by plaintiff of the cotton bought on the 15th of January, 1894, or of that sold on 22d January, 1894.    5th.  That the action being for special damages, the complaint fails to state that the defendant company had any notice of the damages which would result from the failure to deliver the message promptly.

Upon this demurrer, the case came on to be heard by his Honor, Judge Aldrich, who rendered judgment overruling the demurrer, upon grounds which need not be stated here, as they are fully set forth in the Circuit decree, which should be incorporated in the report of the case.    From this judgment defendant appeals, upon the several grounds set out in the record, which should likewise be incorporated in the report of the case.

The first question which presents itself is, whether it appears from the complaint that the contract upon which the plaintiff's claim for damages rests was such a contract for the future delivery of cotton as our statute declares to be void.    By the act of 1883, 18 Stat., 454, now incorporated in the Rev. Stat. of 1893 as section 1859, the General Assembly has declared that "Every contract, bargain or agreement, whether verbal or in writing, for the sale or transfer at any future time of * * * any cotton, * * * shall be void, unless the party contracting, bargaining or agreeing to sell or transfer the same is, at the time of making such contract, bargain or agreement, the owner or assignee thereof, or is at the time authorized by the owner or assignee thereof, or his duly authorized agent, to make

and enter into such contract, bargain or agreement, or un-less it is the *bona fide* intention of both the parties to the said contract, bargain or agreement, at the time of making the same, that the said * * * cotton * * * shall be ac-tually delivered in kind by the party contracting to sell and deliver the same, and shall be actually received in kind by the party contracting to receive the same at the period in the future mentioned and specified in the said contract, bargain or agreement;" and by the next section (1860) it is provided that "In any and all actions brought in any court to enforce such contracts, bargains or agreements, or to collect any note or other evidence of indebtedness, or any claim or demand whatever found upon any such con-tract, bargain or agreement, the burden of proof shall be upon the plaintiff to establish that, at the time of making such contract, bargain or agreement, the party making the same was the owner or assignee of the * * * cotton * * * so agreed to be sold and transferred, or was at the time au-thorized by the owner or assignee thereof, or his duly authorized agent, to make and enter into such contract, bargain or agreement, or that, at the time of making such contract, bargain or agreement, it was the *bona fide* inten-tion of both parties thereto that the said * * * cotton * * * so agreed to be sold and transferred shall be actually delivered and received in kind by the said parties at the future period mentioned therein." Now, it is clear, upon the plainest principles of pleading, that if an action should be brought to enforce the performance of a contract for the future delivery of cotton, or to recover damages for the breach of such contract, it would be necessary to state all the material elements constituting such contract. For ex-ample, it is well settled that in an action of assumpsit for the breach of a simple contract, it is necessary to allege and prove the consideration of the contract, except in cases falling under the statute of Ann, promissory notes, &c.; and this for the reason that the consideration is an essen-tial element of the contract. If, therefore, in an action

based upon a contract for the future delivery of cotton, the complaint should simply state, as it does in this case, the making of the contract, without alleging that the plaintiff was the owner or assignee of the cotton at the time the contract was made, or was at the time authorized by the owner or assignee, or his duly authorized agent, to enter into such contract, or that it was the *bona fide* intention of both parties, at the time of making said contract, that the cotton should be actually delivered and received in kind at the future period mentioned, it is clear that such complaint would not state facts sufficient to constitute a cause of action, because it omitted these allegations material to the validity of the contract, which constituted the basis of the action. Indeed, such a complaint would state nothing more than a contract expressly declared by statute to be void. Again, sec. 1860 of the Rev. Stat., above quoted, throws upon a plaintiff in an action based upon a contract for the future delivery of cotton the burden of proving that he was the owner or assignee of the cotton, or that he was authorized by such owner or assignee, or by his duly authorized agent, to make such contract, or that it was the *bona fide* intention of both parties that the cotton should be actually delivered and received in kind at the future period designated in the contract; and the rule of Code pleading is, that what must be proved must be alleged. As is said in *State ex rel. Slay* v. *Williams*, 19 S. C., at page 65: "For a complaint to be thus defective, something must be omitted which the plaintiff is required to prove in order to maintain his suit." And, as is said in *Lilly* v. *Railroad Company*, 32 S. C., at page 144: "A good rule by which to test the sufficiency of a complaint, when assailed by a demurrer like that interposed here, is to inquire what facts are necessary to constitute a cause of action, and then to examine whether such facts are alleged, the plaintiff, in his evidence, being confined to such alleged facts." Under this rule, it is clear that the plaintiff could not be permitted to make the proof of such facts as the statute requires him

to prove, because such facts are not alleged in the complaint, and hence it is amenable to the demurrer interposed. It is contended, however, that while this may be true where the action is brought to enforce a contract for the future delivery of cotton, or to recover damages for the breach of such a contract, yet it does not apply to the present case, which is not of that character. The next question, therefore, presented is, whether the principles above set forth can be applied to the case under consideration. While it is true that the action is not brought to enforce the performance of a contract for the future delivery of cotton, nor to recover damages for the breach of such a contract, yet it is equally true that one of the essential elements of the plaintiff's claim for damages is that, being under contract—of course, meaning a valid contract—for the purchase and sale of cotton for future delivery, he has been damaged by the negligence of defendant company in delivering a message relative to such contract. If the plaintiff saw fit to voluntarily stand to and abide by a contract which he was under no legal obligation to fulfill, it is difficult to understand what claim he can have to recover, at the hands of a court of justice, damages which he has sustained while engaged in the violation of a law passed by the State in which such court is held. It is, therefore, necessary, in this case, to inquire into the validity of the contract as set forth in the plaintiff's complaint giving rise to his claim of damages against the defendant, and without which he would have no such claim; and if it is found that such contract was illegal, as we have seen that it was, then the plaintiff has no foundation for his claim. As is said in 25 Am. & Eng. Enc. of Law, 814: "The better rule seems to be that where the message relates to a gambling or similar illegal transaction, neither the sender nor receiver can maintain an action for damages on the ground that the company refused to transmit the message. If, while attempting to transmit such message, the company failed to exercise proper care, whereby an erroneous message was

sent, the sender may recover the price paid for transmission; but neither he nor the receiver can invoke the illegal contract, or the gain or loss resulting from it, to measure the damages sustained by him in consequence of an erroneous transmission." Of course, the same principle would apply to the case of a message delayed through the negligence of the company. The doctrine above quoted from the Encyclopædia is fully sustained by *Melchert* v. *Telegraph Co.*, 11 Fed. Rep., 194, and *Cothran* v. *Telegraph Co.*, 83 Ga., 25, found in 9 S. E. Rep., 836. In that case, Bleckley, C. J., in delivering the opinion of the Court, says that the previous case of *Telegraph* v. *Co. Blanchard*, 68 Ga., 299 (reported, also, in 45 Am. Rep., 480, holding otherwise), was decided at a time when it was held that dealings in futures "were regarded as legal and obligatory; but that since that time such dealings had been declared illegal, and hence the case of *Telegraph Co.* v. *Blanchard* stands as overruled." It is trne, that in the subsequent case of *Gray* v. *Telegraph Co.*, 87 Ga., 350 (found in 13 S. E. Rep., 562, and reported, also, in 27 Am. St. Rep., 259), it was held that in an action against a telegraph company to recover the *statutory penalty* incurred by a failure to deliver with due promptness a message which it had received for transmission, and accepted payment for the same, cannot defend the action upon the 'ground that the message related to a transaction in futures, and, consequently, to an illegal transaction. But Chief Justice Bleckley, in delivering the opinion of the Court, rests the decision upon the terms of the statute imposing the penalty, and draws a distinction between that case and the previous case of *Cothran* v. *Telegraph Co.*, which is recognized and affirmed. But, in addition to this, our statute, sec. 1860, Rev. Stat., *supra*, expressly declares not only that in any action upon a contract for the future delivery of cotton, or to collect any note or other evidence of indebtedness growing out of such contract, the burden of proof shall be upon the plaintiff to prove the conditions set forth in the preceding section, upon which alone such

contract can be regarded as legal, but it also imposes a like burden of proof upon the plaintiff in any action on "*any claim or demand whatever founded upon any such contract, bargain or agreement.*" Now, if the claim or demand of the plaintiff in this action is not founded upon a transaction in "futures," then it has no foundation at all. The ground upon which transactions in "futures," as they are ordinarily conducted, are held to be illegal is, that they amount to nothing but gambling. As is said by Mr. Justice Mathews, in *Irwin* v. *Willard*, 110 U. S., at page 508: "The generally accepted doctrine in this country is, as stated by Mr. Benjamin, that a contract for the sale of goods to be delivered at a future day is valid, even though the seller has not the goods, nor any other means of getting them than to go into the market and buy them; but such contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller and the price to be paid by the buyer; and if, under the guise of such a contract, the real interest be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager, and is null and void." And as is further well said by the same Justice, in the same case, at page 511, borrowing the language of the Circuit Judge: "It makes no difference that a bet or wager is made to assume the form of a contract. Gambling is none the less such because it is carried on in the form or guise of legitimate trade." These views have /been recognized and approved in the subsequent cases of *Embrey* v. *Jemison*, 131 U. S., 336, and *Bibb* v. *Allen*, 149 U. S., 481.

While it is true, that formerly the burden of proof was upon the party seeking to impeach such a transaction by showing affirmatively its illegality, as was held in *Roundtree* v. *Smith*, 108 U. S., 269, *Irwin* v. *Willard*, and *Bibb*

v. *Allen, supra*, as well as in our own case of *Williams* v. *Connor*, 14 S. C., 621, decided in 1881, yet since that time the act of 1883, above referred to, has been passed, which places the burden of proof upon the plaintiff.

It is said, however, that this contract was made in New York, and was to be performed there, and hence the question of its illegality must be tested by the law of New York.

The general rule undoubtedly is, that a contract, which is valid where it is made and is to be performed, is to be treated as valid everywhere; but this rule is subject to certain well established exceptions, one of which is a contract declared invalid by the law of one State, even where it is valid by the law of the State where it is made or where it is to be performed, will not be treated as valid by the Courts of the State in which said contract has been declared by statute invalid. As is said in 2 Kent Com., 458: "It is, however, a necessary exception to the universality of the rule, that no people are bound, or ought to enforce, or hold valid in their courts of justice, any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or violates a public law." See to same effect, Clark on Contracts, p. 502, *et seq.*, and 3 Am. & Eng. Ency. of Law, p. 554, *et seq.*, where, in a note, it is said: "The enforcement by one nation of contracts made under the laws of another, rests on the principle of comity, which cannot be so far extended as to violate the positive legislation of the nation called on to enforce such contracts." In *Flagg* v. *Baldwin*, 38 N. J. Eq., 219, we have a case in which the foregoing principles were recognized and applied, and there it was held that a contract for speculating in stocks upon margins made in another State, where they are presumed to be lawful, will not be enforced in New Jersey, where they are unlawful under the statute of that State to prevent gaming. That case presents quite a full review of the authorities upon the subject, and is well worthy of attention. If, therefore, it had appeared (as it does not in this case) that there is no

statute in New York similar to ours, declaring contracts like the one set forth in the complaint, to be invalid, yet that would not affect the question.

Again, it has been held in this State, in the case of *Allen* v. *Watson*, 2 Hill, 319, that the legality or illegality of a transaction depends on the law of the place where it transpires; but it is incumbent on those who would avail themselves of it, to show what that law is; and until that is done, our Courts must decide that question according to the laws of this State. The same doctrine seems to have been held in *Thatcher* v. *Morris*, 11 N. Y., 437, which is represented in the New Jersey case above cited, as holding that: "Where contracts of a particular kind are forbidden by the law of the State in which they are sought to be enforced, and the party seeking to enforce them relies upon the fact that they were made in a foreign State, and are valid contracts by the *lex loci contractus*, it has been held elsewhere that he is bound to aver and prove those facts." Now, as there is no allegation in the complaint that the law in New York is otherwise than what it is in this State, the plaintiff cannot, in the absence of any such allegation, derive any benefit from the fact that the contract was made and was to be performed in New York.

But, in addition to this, it may now, since the cases of *Rice* v. *Gist*, 1 Strob., 82, and *Mordecai* v. *Dawkins*, 9 Rich., 262, be regarded as settled, in this State at least, that all wagers are unlawful, on account of their immoral tendency; and if contracts for the sale of "futures" are denounced, as we have seen, as gambling contracts, where there is no *bona fide* intention that the article contracted to be sold shall be actually delivered and received in kind at the time appointed for the contract, it matters nothing what the law of New York may be, as it is quite clear that no principle of comity requires the Courts of this State to recognize a contract which is regarded here as *contra bonos mores*.

The Circuit Judge says, in his decree: "The defendant,

at most an agent, cannot interpose the defense of dealing in futures. That defense has reference to the parties buy- and selling;" and cites 8 Am. & Eng. Encycl. of Law, 1014. It is difficult to perceive the application of the authority cited to the case in hand. The law, as there laid down in the text, simply established the doctrine that where an agent employed to carry out a gambling transaction re- ceives money accruing from such business really belonging to his principal, is sued for such money, he cannot defend himself from liability to account for such money by show- ing that the business was unlawful; and the case cited from Ohio decides no more. It is true, that the following lan- guage is used in that case, "the rule which denies civil remedies in such cases applies only to the parties to the illegal transaction;" but that was nothing more than a mere *dictum*, not called for by anything in that case—for the only point in that case was, whether an agent sued for cer- tain profits which were in hands belonging to the plaintiff could set up as a defense for such action that the contract from which such profits were derived was a gambling trans- action, and it was held that he could not; just as in our case of *Tate* v. *Pegues*, 28 S. C., 463, where the defendant was sued for money received by him for the plaintiffs on sales of fertilizers made by him as agent, and for the value of such of the fertilizers as he had appropriated to his own use, could not relieve himself from liability to account to the plaintiffs for the money and property of the plaintiffs by showing that the sacks containing the fertilizer were not tagged as required by law. This was upon the obvious ground that one who receives the money or property of another must, when called upon, account for the same. As is said in the Ohio case, above referred to, as cited in the Am. & Eng. Encycl. of Law, "it is contrary to public policy and good morals to permit employees, agents or servants to seize or retain the property of their principal, although it may be employed in illegal business and under their con- trol. No consideration of public policy can justify a low-

ering of the standard of moral honesty required by persons in these relations." Indeed, the true theory in such cases is, that the illegal business out of which the money received by the agent arises is no part of the cause of action, and is not necessarily connected therewith—the real cause of action being money had and received by the agent for the use of his principal. This is a principle upon which the cases of *Anderson* v. *Moncrieff*, 3 DeS. Eq., 125, and *Owen* v. *Davis*, 1 Bail., 315, cited in support of the decision in *Tate* v. *Pegues*, *supra*, rest; for, as said by O'Neall, J., in *Owen* v. *Davis*, "One who receives money to the use of another on an illegal contract cannot retain it to his own use on the ground of the illegality of the contract." The distinction between those cases and the one now under consideration is obvious. Here the defendant is not sued for any money received by it for the use of the plaintiff, and could not be so sued, for the reason that defendant has not received any money belonging to the plaintiff. The action here is to recover damages alleged to have been sustained by reason of the negligence of the defendant in delivering a telegraphic message relating to a void contract with which the plaintiff was under no obligation to comply; and, as is said in *Armstrong* v. *Toler*, 11 Wheat, at page 258, "Where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it. *And if the contract be in fact only connected with the illegal transaction and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it*" (italics mine). Now, it is obvious that the contract with the telegraph company, though in fact a new contract, obviously grew out of the illegal transaction in "futures;" indeed, but for that, the plaintiff would have no cause of action whatever, except possibly to recover back the sum paid for the transmission of the message. But no such cause of action is stated in the complaint—indeed, it does not appear that anything was paid for the transmission of the message, and certainly

what amount was so paid is not stated, and hence the plaintiff is not entitled to judgment even for that sum.

Under the foregoing views, the other questions presented by the demurrer cannot arise, and need not, therefore, be considered.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the demurrer be sustained.