7861

LEPPARD v. WESTERN UNION TEL. CO.

1. TELEGRAPH COMPANIES.—Where there is a delay of three-fourths of an hour in starting a message at the initial office and twenty-four hours' delay in delivering it the Court cannot say that the showing that it was under mistake in receiving over phone sent to the wrong address, entirely overthrows the presumption of negligence.

2. IBID.—DAMAGES.—Under the allegations here it is proper to include as damages the fee paid for message of inquiry caused by delay in delivering primary message.

    *Gist* v. *Tel. Co.,* 45 S. C., 312, *distinguished from this.*

3. IBID.—INSTRUCTION complained of as to presumption of negligence arising from delay in transmitting and delivering a telegram *held* not to be error, because: (1) there was no request to modify the request given; (2) the whole charge shows the Court meant a *prima facie* presumption and not a conclusive one.

4. IBID.—It is incumbent on a telegraph company to explain its mistakes in delay in delivering messages if it can. The instructions here as to effect of delivery at wrong address because of mistake was full and fair to the carrier.

Before WILSON, J., Edgefield, October term, 1909. Affirmed.

Action by W. M. Leppard against Western Union Telegraph Co. Defendant appeals.

*Messrs. Geo. H. Fearons, Nelson, Nelson & Gettys,* for appellant, cite: *Amount paid for transmission of message establishes the relation between the parties and cannot be recovered:* 70 S. C. 83; 74 S. C. 491; 45 S. C. 372. *Presumption of negligence may be rebutted:* 69 S. C. 549; Jones

on Tel. Cas., sec. 312; 5 S. C. 377; 19 S. C. 81. *Plaintiff must show facts from which mental suffering would ordinarily arise:* 73 S. C. 382, 525.

*Messrs. Thurmond & Nicholson,* contra, cite: *Delay in delivery raises a presumption of negligence:* 69 S. C. 545; 70 S. C. 423. *Upon failure to find addressee carrier should notify sender:* 67 L. R. A. 153. *The agent receiving the message over the phone was carrier's agent:* 82 S. C. 247; 75 S. C. 182. *Proof of mental anguish:* 69 S. C. 537. *What acts warrant sending issue of wilfulness to jury:* 84 S. C. 67, 155.

April 17, 1911. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The plaintiff brought this action to recover damages for negligent delay in delivering the following telegram:

"Valdosta, Ga., March 11, 1909.
To W. M. Leppard, Trenton, S. C.

"Your father died this a. m. at nine o'clock. I will leave for home with body tonight at eleven o'clock. Heart trouble cause of death, very sudden. Signed J. W. Brogden."

According to plaintiff's testimony the telegram was delivered to the agent of the defendant company at Valdosta, Ga., at not later than two o'clock p. m. on March 11, 1909, over the telephone by Frank Hunter for J. W. Brogden from Clyatville, a small town about ten miles from Valdosta, and was not delivered to plaintiff at Trenton, S. C., until about two o'clock p. m. on March 12, 1909. The home of plaintiff's father, F. M. Leppard, was at Trenton, S. C., and he was on a visit to his brother in law, J. W. Brogden, living at or near Clyatville, Ga., when he died. About nine o'clock on the morning of the 12th plaintiff read a notice of his father's death in "The State," published at Columbia, S. C., and being distressed at not hearing directly

from Valdosta, he soon thereafter went to the defendant's office at Trenton, S. C., and inquired of the agent if there was any message for him, and upon the agent stating that no message had arrived, plaintiff at an expense of seventy-nine cents, caused the agent to send a message to the ticket agent of the railroad at Valdosta, Ga., inquiring about his father and also requested the Trenton agent to inquire at other telegraph stations whether there was such a message. About 12 o'clock on the 12th plaintiff received a telegram from J. W. Brogden from Augusta, Ga., notifying him that he would leave with his father's remains at six o'clock that day. There was therefore testimony tending to show that if the telegram had been delivered at any time previous to 9 o'clock on March 12th, the plaintiff would not have sustained the expense of the telegram sent by him and would not have suffered the mental distress for several hours from 9 to 12 or from 9 to 2, as the case may be, which arose out of the uncertainty as to the death of his father, and as to the time of the arrival of the body at Trenton, S. C., and as to when necessary arrangement for its reception and burial should be made. We find nothing whatever in the testimony upon which to base a finding for mental anguish suffered at any other period than between 9 a. m. and 2 p. m. as the result of the delay in delivering the telegram, for the body arrived in the night of March 12th and the funeral was had at Trenton, S. C., on the 13th without any delay or want of funeral preparations fairly attributable to the conduct of the defendant.

Was there any testimony tending to show negligence of defendant? First there is the presumption of negligence arising from long delay in delivering the telegram, amounting in this case to about twenty-four hours. *Poulnot v. Telegraph Co.,* 69 S. C. 545, 48 S. E. 622; *Hellams v. Tel. Co.,* 70 S. C. 87, 49 S. E. 12; *Arial v. Tel. Co.,* 70 S. C. 423, 50 S. E. 6, and other cases. Then there was evidence that the message was not transmitted

from the Valdosta office until about three-quarters of an hour after delivery to it, that it was then transmitted to Clinton, S. C., instead of Trenton, S. C., although Frank Hunter and another witness testified that the proper address was given to the Valdosta agent and repeated back by him as Trenton, S. C., that at 10 a. m. the Trenton office inquired of Valdosta office as to the said message and notwithstanding this information as to the correct address the message was not delivered until four hours later. It is true the Valdosta agent testified that the address given him over the phone was Clinton, S. C., and there was testimony of numerous service messages with reference to the message in question and an effort to deliver at the proper address, but the testimony for defendant was not so conclusive that the Circuit Court could declare as matter of law that the *prima facie* showing of negligence was entirely overthrown.

From the foregoing statement it must follow that there was no error of law in refusing the motion to direct a verdict for defendant and for a new trial on the ground that there was no testimony tending to establish plaintiff's case. It may be conceded that the verdict was large in proportion to the mental anguish shown, but it is well settled that this Court cannot disturb a verdict for mere excessiveness. It should appear that the verdict is so excessive as to warrant an inference that it was the result of caprice or some improper or corrupt motive. This is particularly true in mental anguish cases, where this Court has no standard for measuring the damages.

As said in *Willis* v. *Tel. Co.,* 69 S. C. 536, 48 S. E. 538: "Our statute allowing recovery in telegraph cases for mental suffering provides no rule of evidence for its ascertainment. In the consideration it should be borne in mind that this statute provides for the recovery of damages to which no legal standard of measurement can be applied more definite than the common sense of the jury, regulated by the discre-

tion of the Circuit Judge to grant new trials, when it seems to him common sense was not applied by the jury."

It remains to consider certain exceptions to the charge. It is alleged that the Court erred in charging: " 'In arriving at actual damages, a jury may take into consideration what it is alleged was paid out in actual money in a case. The jury can also take into consideration as far as they get at it in dollars and cents what amount a person should receive for the mental anguish he has suffered * * *. They allege in their complaint that the plaintiff paid for a telegram and that on account of the delay * * * plaintiff suffered mental anguish.' The error being that the charge left it to the jury to award as damages the transmission fee paid on the telegram and other sums paid out, whereas this is not alleged in the complaint as an element of damages, and if it were, the plaintiff cannot do both, rescind the contract and get back the benefits which he had conferred on the defendant and at the same time treat the contract as existing for the purpose of recovering damages for a breach thereof. The payment or promise of the fee is what establishes the relations between the parties whether the action is on contract or in tort."

The complaint in the ninth paragraph alleged that "the plaintiff got the agent of defendant at Trenton, S. C., to send a message to the ticket agent of railroad at Valdosta, Ga., inquiring about the plaintiff's father and paid the charges on this message amounting to seventy-nine cents." We see no reason why this expense incurred because of the delay in delivering the telegram in question should not be allowed in estimating damages. The case of *Gist* v. *Tel. Co.*, 45 S. C., 372, 23 S. E. 143, cited by appellant, is not to the contrary, for in that case it was neither alleged nor shown that anything was paid for the transmission of the message. However, no stress was laid on this matter by counsel for plaintiff, or the Court. The Court expressly charged at the request of appellant: "I charge you that you

cannot find a verdict in any amount for the plaintiff, unless you find he suffered mental anguish and that mental anguish was caused by the delay if there was any delay, in the delivery of the telegram and that the delay was caused by negligence of the defendant."

It is next contended that the Court should have modified plaintiff's second request: "If the jury believe from the evidence that the telegram referred to in the complaint was not promptly transmitted and delivered, or not transmitted and delivered within a reasonable time then the presumption arises under the law that the defendant was guilty of negligence relative to the transmission and delivery of the same,"—by a statement that the presumption could be rebutted by showing that the failure to deliver in a reasonable time was not due to its negligence. This exception cannot be sustained for two reasons: (1) there was no request to modify the proposition which was correct as a general proposition, (2) the charge as a whole shows that the Court meant a *prima facie* and not a conclusive presumption of negligence arises upon the proof of unreasonable delay in delivering a telegram.

We do not think the Court submitted to the jury issues not raised by the pleadings or testimony as alleged in the third exception.

The remaining exception is as follows:

(4) "Because his Honor erred in his explanation or modification of defendant's first request to charge, as follows: 1st. 'The defendant is not bound to explain how the mistake occurred, if there was a mistake, and is only required to show that it did not occur through the carelessness or negligence of its servants or officers'—the explanation of his Honor being: 'That means this, gentlemen, that should a mistake occur in sending a telegram, if the mistake was made by some one else, and was not made by the telegraph company, why then the telegraph company would not be responsible for the mistake of some

one else * * *,' the error being that this explanation is erroneous, as a mistake may occur without negligence in some unexplainable way, but if the company was not itself negligent there can be no recovery, and it is respectfully submitted that the remarks of the Judge were no explanations whatever, but were confusing to the jury, and prejudicial to defendant."

The request to charge was not correct as it is incumbent on the telegraph company to explain its own mistakes resulting in negligent delay of a telegram, if it can do so; for the reason that its business is one that requires special skill and knowledge and it is in a better position to explain than its patron.

The particular mistake referred to was in reference to whether the address given to the Valdosta agent was "Trenton" or "Clinton," and the transmission of the message to Clinton instead of to Trenton. On this subject appellant received a full and fair charge from the Court, as the following instructions in accordance with appellant's requests show:

Fourth. " 'If you find that the telegram as filed with the defendant read "Clinton" and not "Trenton," or if you find that the telegram as read over phone to the party in the telegraph office of defendant, who received it, read "Trenton," but that the party receiving the message as a man of ordinary care and prudence honestly understood the word to be "Clinton," and that this was the proximate cause of the delay in the delivering of the telegram, if there was delay, then your verdict should be for the defendant.' I charge you that, Mr. Foreman."

Fifth. " 'If you find that the person in the defendant's office at Valdosta, who took the message over the phone, made no mistake in taking the message over the phone, you must find for the defendant, or if you find that the agent of defendant did make a mistake, but if it was not done care-

lessly or negligently, you must find for the defendant.' I charge you that."

Sixth. " 'If the operator in the telegraph office took the message over the phone, and in so doing made a mistake in the message, if you find that mistake was made without negligence, but was such a mistake as would have been made by a man of ordinary care and prudence, then you must find for the defendant, for in the transmission and delivery of a telegraph message, a telegraph company is only bound to exercise ordinary care and diligence.' I charge you that."

The exceptions are overruled and the judgment of the Circuit Court is affirmed.