CASE 87—PROCEEDINGS BY WARRANT IN THE NAME OF THE CITY
OF LOUISVILLE, AND IN THE POLICE COURT OF THE CITY OF LOUIS-
VILLE AGAINST HENRY WEHMHOFF, ED. ALVEY, JAMES S. PIRTLE
AND CHARLES SMITH, FOR THE VIOLATION OF A CITY ORDINANCE
BY OPERATING POOLROOMS.—NOV. 18.

# City of Louisville v. Wehmhoff &c.
## Same v. Alvey &c.
## Same v. Pirtle.
## Same v. Smith.

APPEAL FROM JEFFERSON CIRCUIT COURT, CRIMINAL DIVISION.

FROM AN ORDER DISMISSING THE CITY'S APPEAL TO THE CIRCUIT COURT
FROM JUDGMENTS SUSTAINING DEMURRERS TO THE WARRANTS, THE
CITY APPEALS. REVERSED.

MUNICIPAL CORPORATIONS—ORDINANCES—LOCAL LAWS—COMMON LAW
OFFENSES—TITLE EMBRACING SEVERAL SUBJECTS— PROSECUTION
IN NAME OF CITY—WARRANTS—SUFFICIENCY—AMENDMENT—AP-
PEAL— GAMING— MUNICIPAL REGULATION— VALIDITY OF ORDI-
NANCES—INTERSTATE COMMERCE— INTERFERENCE—INCONSISTENT
CONTENTION.

Held:   1. Where an appeal is dismissed because of a clerical mis-
prision in the style of the cause, and, on being corrected as in-
dicated by the dismissal, an appeal is again taken, the subsequent
appeal will not be dismissed, as being the same appeal pre-
viously dismissed.

2. Kentucky Statutes, 1899, section 2922, providing that the le-
gality of an ordinance of a city of the first class may be tested
by the city by an appeal to the Jefferson circuit court, and then
to the Court of Appeals, as other cases in the circuit court are
appealed, and referring to Louisville, in Jefferson county—the
only city of the first class—is not repugnant to Const., sec-
tion 59, forbidding local laws regulating the jurisdiction of
courts.

3. Const., section 123, providing that all prosecutions shall be in
the name and by the authority of the Commonwealth of Ken-
tucky, does not preclude a prosecution in a municipal court, in
the name of the city, for the violation of an ordinance, author-

City of Louisville v. Wehmhoff, &c.

ized by Kentucky Statutes, 1899, section 2917, providing that all fines realized in such court, whether the prosecution be in the name of the city or the Commonwealth, shall be paid into the city treasury.

4. Under Kentucky Statutes, 1899, sections 2742, 2783, conferring on cities of the first class power to pass such ordinances for municipal purposes as they may deem proper, not in conflict with the Constitutions of the United States and Kentucky, and section 2782, providing that the council shall have power to pass ordinances imposing fines not exceeding $100 for any designated misdemeanor provided for by the general laws of the Commonwealth, but, where the general statutes impose a fine not exceeding $100, such fine may be imposed by ordinance, the council may by ordinance punish acts which are offenses at common law, as section 2782 was not intended to restrict the council's powers in defining what should be offenses within the city, but defined its authority in prescribing the limits of punishment.

5. Louisville City Ordinance, entitled "An ordinance to prevent the operation of poolrooms in the city of Louisville," and providing for the punishment of the operator of the poolroom, his servants or employes engaged in operating it, the owner or controlling agent of the building, who knowingly lets it for the purpose, the telegraph, telephone, or messenger company knowingly transmitting messages to enable the selling of pools, and the person who buys or has possession of the tickets, is not repugnant to Kentucky Statute, 1899, section 2777, providing that no ordinance shall embrace more than one subject, and that shall be expressed in its title.

6. Louisville City Ordinance, section 4, making it unlawful for any telegraph company to furnish to any owner, agent, or employe of any poolroom maintained in the city any communication concerning any horse races in or out of the city is not invalid as an unauthorized interference with the legitimate business of a common carrier to contract to deliver messages.

7. A warrant charging a violation of an ordinance to prevent the operation of poolrooms should not be dismissed because the ordinance specifies several offenses, as it may be amended so as to apprise the accused of the provision he is charged with violating.

ON PETITION FOR REHEARING.

8. A contention on the hearing of an appeal that the offense created by a certain ordinance was not an offense at all did not estop the one making it from arguing on the rehearing that

the ordinance was void because violative of ·Const., section 168, forbidding the passage of ordinances fixing less penalties than those fixed by the statute for the same offense.

9. Conceding that an ordinance prohibiting and punishing the operation of poolrooms was broad enough to include French pools, which has been construed as a contrivance used in betting, within Kentucky Statutes, 1903, sections 1960-1961, which fix a greater penalty than that fixed by the ordinance for setting up and operating such contrivances, and hence is, as to French pools, void, because violative of Const., section 168, forbidding the enactment of ordinances prescribing less penalties than fixed by statute for the same offense, yet it is void only as to that class of pool selling, and is valid in other particulars prescribed therein, such as the penalties affixed to the acts of having pool tickets in possession, and furnishing telegraphic messages to operators, knowing that they are to be used to further the business of pool selling, which are not within the statutory prohibition.

10. The act of pool selling or betting by buyers on pools is not a game, within Kentucky Statutes, 1903, section 1978, prescribing a penalty for those suffering any game in which any property or money is bet, won, or lost in any house or in premises in their occupation.

11. A city ordinance forbidding the transmission to a poolroom operator of messages intended to be used in business of pool selling in the city is a valid exercise of the police power of the State.

12. An ordinance forbidding transmission of telegraphic messages to poolrooms is not an unconstitutional regulation of interstate commerce, though the telegrams come from another State.

HENRY L. STONE, CITY ATTORNEY, FOR APPELLANT.

## AUTHORITIES CITED.

Statement. 1. Sec. 2782, Kentucky Statutes; sec. 2922, Kentucky Statutes; City of Louisville v. Wehmhoff, &c., 24 R., 438-443, 68 S. W., 650-653.

2. These prosecutions are properly conducted in the name of the city of Louisville. Secs. 2917, 2922, 2936, 2939, Kentucky Statutes; Williamson v. Commonwealth, 4 B. Mon., 446; Dillon on Municipal Corporations, vol. 1, sec. 433, p. 502; secs. 11, 10, Criminal Code.

3. The offense against the appellees is sufficiently stated in the ordinance warrants. Secs. 10, 27, Criminal Code; Fourth Compilation of the Ordinances of the City of Louisville, pp. 309-312; Ex parte Lacy (Va.), 31 L. R. A., 822; 3 Rob. Pr.,

old ed., p. 10; Bishop, Crim. Proc., sec. 714; secs. 2795, 2751, 2761, 2775, 2922, Kentucky Statutes; Barret v. Godshaw, 12 Bush, 592; Woolley v. City of Louisville, 24 R., 1362.

4. The ordinance in controversy does not violate the act for the government of cities of the first class in regard to the title and the subject matter thereof. *Ex parte* Lacy (Va.), 31 L. R. A., 822; Ingles v. Straus, 91 Va., 209; Commonwealth v. Brown, 91 Va., 762.

5. The statutory right of the appellant, city of Louisville, to appeal from judgment of the police court to the circuit court, and thence to the court of appeals. Secs. 2922, 3063, 3367, 3519, 2912, 2993, Kentucky Statutes, sec. 59 of the Constitution; Burnett's City Code (1884), sec. 27, p. 189; City of Louisville v. Kuntz, 20 R., 805; Shoemaker v. Hodge, judge, 23 R., 736; 63 S. W., 979; Winston, commissioner, v. Stone, auditor, 102 Ky., 423; Stone, auditor, v. Wilson, 19 R., 126; Commonwealth v. E. H. Taylor, Jr., Co., 101 Ky., 325; City of Lexington v. Home Construction Company, 23 R., 1387; secs. 362, 363, Criminal Code.

6. The city of Louisville, under sections 2782 and 2783, Kentucky Statutes, is authorized to legislate against offenses at common law. Secs. 2782, 2783, 2913, Kentucky Statutes; Burnett's City Code, sec. 20, p. 361; Respass v. Commonwealth, 21 R., 789; Simms v. Owensboro, 99 Ky., 49; Cons. Debates, vol. 2, pp. 2992-3; Kemper v. Commonwealth, 85 Ky., 219; Kyle v. Malin, 8 Indiana, 34; City of Crawfordsville v. Braden, 130 Ind., 214; Leesburg v. Putnam, 103 Ga., 110; Jacksonville, Electric Co. v. Jacksonville, 30 L. R. A., 340; Cooley on Constitutional Limitations, 231; 1 Dillon on Municipal Corp., secs. 173, 508.

7. The offenses defined by the ordinance to prevent the operation of pool rooms in the city of Louisville are not offenses punishable at common law. Commonwealth v. Respass, 21 Ky. Law Rep., 140, Ib., 789; Kneffler v. Commonwealth, 94 Ky., 359; Bollinger v. Commonwealth, Sharp v. Same, 98 Ky., 574; Commonwealth v. Enright, Ib., 635; Cheek v. Commonwealth, 100 Ky., 1, 79 Ky., 359; Harlow v. Commonwealth, 11 Bush, 610; Russell on Crimes, title "Nuisances," vol. 1, p. 745; Clark on Criminal Law, vol. 2, p. 1126; Bishop on Criminal Procedure, vol. 2, secs. 117 and 278; Burton v. State, 16 Texas Court of Appeals, 156; King v. State, 17 Fla., 191; State v. Bell, 5 Porter, Ala., 375; Commonwealth v. Churchill, 136 Mass., 150; Commonwealth v. Bessler, 97 Ky., 498; Cawein v. Commonwealth, 22 R., 1734; 61 S. W., 275; Sec. 1977, Kentucky Statutes.

8. Telegraph companies, their managers, agents, and employes may be punished for their unlawful acts as' defined in the ordinance to prevent the operation of pool rooms in the city of Louisville. Smith v. Western Union Telegraph Company, 84 Ky., 664; Commonwealth v. Western Union Telegraph Co., 23 R., 1633, 57 L. R. A., 614, 67 S. W., 59; Kneffler v. Commonwealth, 94 Ky., 359; Sec. 1346, Kentucky Statutes; Watson v. Fletcher, 7 Gratt, 1; Gray on Communication by Telegraph, sec. 15; Bryant v. Western Union Telegraph Co., 17 Fed., 825; Cothran v. Same, 83 Ga., 25; Gray v. Same, 87 Ga., 350; Melchert v. American Union Tel. Co., 11 Fed. Rep., 194; Ex parte Lacy, 31 L. R. A., 822; State of Alabama v. Stripling, 36 L. R. A., 81; C. & O. Ry. Co. v. City of Maysville, 24 R., part 1, p. 617.


KOHN, BAIRD & SPINDLE, FRED FORCHT and RICHARDS & RONALD, for appellees.

GEO. H. FEARONS, of counsel.

1. Penal actions are regulated by the Civil Code, but "prosecutions shall be carried on in the name and by the authority of the Commonwealth."

2. A warrant must state the offense. It is not sufficient to refer alone to the title of the act or ordinance creating the offense.

3. A statute conferring special jurisdiction on the "Jefferson circuit court" is local legislation within the inhibition of section 59 of the present Constitution.

4. A city council can not enact an ordinance creating offenses without special legislative authority.

5. An ordinance which makes it criminal for the agent of a telegraph company to deliver a message "concerning any horse race" to "any owner, proprietor, agent or employe of any poolroom" is an attempted exercise of "arbitrary power," and void.


AUTHORITIES CITED.

Secs 59, 123, 233, 168, Kentucky Constitution; Secs., 10, 11, 311, Criminal Code of Ky.; Secs. 29922, 2777, 2742,2782, 2783, Kentucky Statutes; Commonwealth v. L. & N. R. R. Co., 80 Ky., 292; Williamson v. Commonwealth, 4 B. Mon., 146; Wallenweber v. Commonwealth, 3 Bush, 69; McGowan v. Commonwealth, 2 Metcalfe, 4; Wade v. Commonwealth, 3 Ky. Law Rep., 443; Horr & Bemis on Municipal Ordinances, sec. 173; Hunting-

ton v. Peas, 56 Ind., 305; Hughes' Crim. Law & Procedure (Ed., 1901), sec. 2779; Piper v. Gunther, 95 Ky., 119; City of Louisville v. Kuntz, 20 Ky. Law Rep., 805; 132 Pa. State, 275; Gorley v. City, 20 Ky. Law Rep., 602; Shumaker v. Hodge, 23 Ky. Law Rep., 736; Winston v. Stone, Auditor, 102 Ky., 423; Kneiffer v. City of Louisville, 7 Bush, 599; Endlich on Stat., secs. 330, 350, 216, 223, 399; Curtis v. Commonwealth, 23 Ky. Law Rep., 267; Dillon on Municipal Corporations, secs. 315, 316; Ray v. Sweeney, 14 Bush, 11; Commonwealth v. Duff, 87 Ky., 586; Bollinger v. Commonwealth, 98 Ky., 574; Commonwealth v. Enright, 98 Ky., 535; Cheek v. Commonwealth, 79 Ky., 359; Cheek v. Commonwealth, 100 Ky., 2; Commonwealth v. Respass, 21 Ky. Law Rep., 140; Respass v. Commonwealth, 21 Ky. Law Rep., 789; Cawein v. Commonwealth, 22 Ky. Law Rep., 1734; Harp v. Commonwealth, 22 Ky. Law Rep., 1792; City of Owensboro v. Sparks, 99 Ky., 356.

RICHARDS & RONALD, ATTORNEYS FOR APPELLEE, THE WESTERN UNION TELEGRAPH COMPANY.

GEO. H. FEARONS, OF COUNSEL.

1. The Western Union is a common carrier and "occupies the same relation to commerce as a carrier of messages, that a railroad company does as a carrier of goods." Its "business is commerce itself." 105 U. S., 464.

2. The Federal Constitution vests in Congress alone the power to regulate this interstate commerce, and a city council can not enforce an ordinance prohibiting the delivery of such messages.

AUTHORITIES CITED.

Kentucky Statutes, sec. 1346; City of Campbellsville v. Odewalt, 24 Ky. Law Rep., 1717 and 1739; Commonwealth v. W. U., 23 Ky. Law Rep., 1633; Gray on Communication by Telegraph, sec 15; Joyce on Electricity, sec. 862; Western Union v. Ferguson, 57 Ind., 495; Telegraph Co. v. Texas, 105 U. S., 464; Commonwealth v. Smith, 92 Ky., 44; Western Union v. Pendleton, 122 U. S., 356; Joyce on Electricity, sec. 215; The Lottery Cases, 188 U. S., 321 (see pp. 252-3); Kentucky Statutes, sec. 1328; Wabash, &c. v. Illinois, 118 U. S., 557; Leisy v. Hardin, 135 U. S., 100; Bowman v. Chicago Ry. Co., 125 U. S., 465; Constitution of Kentucky, sec. 199; Rhodes v. Iowa, 170 U. S., 412; Vance v. Vandercook, 170 U. S., 444.

City of Louisville v. Wehmhoff, &c.

REPLY OF HENRY L. STONE, CITY ATTORNEY, FOR APPELLANT, TO APPELLEE'S PETITIONS FOR REHEARING.

AUTHORITIES CITED.

Statement.   City of Louisville v. Wehmhoff, *et al.*, 25 R., 995, 76 S. W., 876.

1. The poolroom ordinance is a valid exercise of the police power of the State through the city of Louisville, one of its municipalities.  City of Campbellsville v. Odewalt, 24 R., 1739; Western Union Telegraph Co. v. Texas, 105 U. S., 464; Western Union Telegraph Co. v. Pendleton, 122 U. S., 356; Wabash, St. Louis & Pacific R. R. Co. v. Illinois, 118 U. S., 557-596; Bowman v. Chicago & Northwestern Railway Co., 125 U. S., 465-524; Leisy v. Hardin, 135 U. S., 100-160; Vance v. Vandercook, 170 U. S., 444; Rhodes v. Iowa, 170 U. S., 412; Champion v. Ames, 188 U. S., 321 375; Douglas v. Kentucky, 168 U. S., 488; Phalen v. Virginia, 8 How., 163-168; Stone v. Mississippi, 101 U. S., 814-821;; Beer Co. v. Massachusetts, 97 U. S., 25; Patterson v. Kentucky, 97 U. S., 501; Western Union Telegraph Co. v. James, 162 U. S., 650-663; Covington & C. Bridge Co. v. Kentucky, 154 U. S., 204; Secs. 5266 and 5269, U. S. Compiled Statutes, 1901, vol. 3, pp. 3580-3582; Austin v. Tennessee, 179 U. S., 343-349; State v. Bixman, 102 Mo., 1, 62 S. W., 828; State v. Stripling, 113 Ala., 120; Lacy v. Palmer, 93 Va., 159; State v. Harbourne, 70 Conn., 484; 40 L. R. A., 607; Fortenbury v. State, 47 Ark., 188; Alexander v. State, 86 Ga., 246, 10 L. R. A., 859; Irwin v. Williar, 110 U. S., 499; Embry v. Jemison, 131 U. S., 136; 8 Am. & Eng. Ency. of Law, p. 1005.

2. The grounds urged in the petition for rehearing in behalf of the other appellees are also unavailing.  Sec. 2782, Kentucky Statutes; Commonwealth v. Simonds, 79 Ky., 618; Cheek v. Commonwealth, 79 Ky., 359; Secs. 1955-1980, Kentucky Statutes; Cheek v. Commonwealth, 100 Ky., 1; Neumeyer, Auditor, v. Krakel, 23 R., 190, 62 S. W., 518.

OPINON OF THE COURT BY JUDGE O'REAR—REVERSING.

These actions originated in the police court of Louisville on four summonses or warrants taken out in the name of the appellant, city of Louisville, against the appellees, respectively, for the violation of an ordinance entitled "An ordinance to prevent the operation of poolrooms in the

city of Louisville." The appellees in that court demurred
to the warrants against them, respectively. The demurrers
being each sustained, the city prosecuted an appeal to the
Jefferson Circuit Court, Criminal Division. That court, on
motion of the appellees, dismissed the appeals on the ground
that the statute attempting to confer jurisdiction on it was
unconstitutional. From the judgments of dismissal, ap-
peals were prosecuted to this court. Here the appeals were
dismissed because it appeared that the cases in which the
judgments appealed from had been rendered were styled
in the circuit court, "Commonwealth of Kentucky, Appel-
lant, v. Henry Wehmhoff, &c., Appellees." It was said that,
for aught the record showed, the prosecutions begun in
the police court, styled, "City of Louisville, Plaintiff,"
were yet pending on the appeals in the circuit court. See
City of Louisville v. Wehmhoff, &c., 24 R., 438, 68 S. W.,
650. In the course of the majority opinion on that appeal,
it was said: "If a clerical misprision in regard to the pros-
ecutions of the appellant against appellees has occurred
in the city court, the appellant has a right to have such
misprisions corrected, upon proper proceedings, and the dis-
missal of this appeal in no wise affects that right. There
is nothing in this judgment or the record, as now before
us for consideration, which would preclude the appellant
from obtaining a trial of the appeals which it took from
the police court to the circuit court; and we expressly hold
that this judgment of dismissal is no bar to the right of
appellant to have a trial of the appeals prosecuted by it as
aforesaid, or from obtaining a correction of the records of
the Jefferson circuit court, if it is otherwise entitled to
such correction." Upon the filing of the mandate in the
circuit court, appellant city took appropriate steps to cor-
rect the clerical misprision indicated, and it was corrected

by a judgment of that court as follows (after reciting the
fact of the misprision and its nature): "It is now further
adjudged by the court that said errors and misprisions of
the clerk be, and the same are hereby, corrected by the
entry of the foregoing orders and judgments in the above-
styled appeals in the name of the city of Louisville as ap-
pellant, instead of the Commonwealth as appellant, as of
the dates aforesaid, including the final judgment therein on
November 25, 1901, *nunc pro tunc.*" Among the orders re-
ferred to in the foregoing quotation was this one (correctly
styled): "This day the court, being advised, sustained the
motion to dismiss the four above-styled appeals. Therefore
ordered by the court that the four above-styled appeals be,
and the same are, dismissed, to which the plaintiff objects
and excepts, and prays an appeal to the Court of Appeals
of Kentucky, which is granted." Thereupon this appeal
was perfected by filing in the clerk's office of this court
the transcript of the record.

The first question made by appellees is that there is no
appeal pending, because they say that the appeal being
prosecuted is the one heretofore actually dismissed, and
that none other has ever been granted either by the clerk
of this court, or by the trial court. We regard the judg-
ment as entered in October, 1902, on the return of this
case from this court, as the only judgment in this case in
that court. Until it was entered as corrected, there could
be no appeal from it by the appellant, city of Louisville.
That is the precise point decided on the former appeal. The
appeal therein granted could not be exhausted till it was
taken, or until it was barred by limitation. It could not
be legally prosecuted before a final judgment was rendered
in the proceedings. Such judgment, under the rulings of
the former opinion, was not entered in the old record, and

hence was not entered till the correction of the clerk's misprision. The motion to dismiss the appeals must ·be overruled.

The very careful preparation of the case presents a number of other questions, the importance of which is earnestly pressed in the argument. We have given them all close consideration, and will dispose of them in their proper order.

2. It is claimed by appellees that the Jefferson Circuit Court had not the jurisdiction of the appeals from the police court. If this be so, the decision of that question terminates our authority to pass upon the merits, and other questions in these cases. The city of Louisville, in Jefferson county, is a city of the first class, and the only city of that class, or that has ever been in that class, in this State, under the classification required by the present Constitution. In the act providing for the organization and government of cities of the first class, among its other governmental agencies, it was provided with a police court and a general council. The power of the council to pass ordinances, and the jurisdiction of the courts to construe and enforce them, were necessarily provided for. In allowing appeals from the judgments of the police court of cities of the first class, as well as in providing a method for testing the validity of the ordinances passed by the general council, it was enacted (section 2922, Ky. St., 1899): "Appeals.shall be from the decisions of said court to the circuit court in all cases where the amount of the fine imposed is as much as twenty dollars. In cases where a fine of twenty dollars or less is imposed under an ordinance, the legality of said ordinance may be tested by the city by an appeal to the Jefferson Circuit Court or by the defendant by a writ of prohibition to the Jefferson Circuit Court, and after a

decision has been rendered in the circuit court, as provided for in this section, either the city or the accused may appeal to the court of appeals as other cases in the circuit court are appealed." Appellees' contention is that this section of the statutes violates section 59 of the Constitution, which limits the power of the Legislature in passing local acts, and forbids those regulating the jurisdiction of courts. The importance of this question is emphasized when it is reflected that there is no other provision of law than section 2922 for the city's prosecuting appeals from the judgments of the police court of Louisville, or for testing the validity of the ordinances of that city, as well as that almost the same provision alone is made for appeals and testing the validity of the ordinances of the cities of the fourth class. Section 3519, Ky. St., 1899. The appellate jurisdiction of the circuit courts of this Commonwealth, as fixed by section 978, Ky. St., 1899, is made to include certain named appeals, "and in all other cases allowed by law." Prior to the passage of the act governing cities of the first class, the city of Louisville was governed under a charter granted by the Legislature before the present Constitution. In that charter there was substantially the same provision for appeals from the police court, and especially for testing the validity of ordinances passed by the general council, as is contained in section 2922. It is found in Burnett's City Code, 1884, sec. 27, p. 189. Although the Constitution does not require the jurisdiction of the circuit courts to be uniform throughout the Commonwealth (section 126), and although by statute they are not, as, for example, the Franklin circuit court is made the fiscal court of the Commonwealth, with jurisdiction concurrent or exclusive in such matters, as well as in certain other penal matters, we are of opinion that this statute does not

affect that question. The jurisdiction of the circuit courts is already (section 978, Ky. St., 1899) made to include "all cases allowed by law," and, by general laws applicable to all the cities of a particular class, provision is made for testing the validity of ordinances, and for appeals from the police courts. The statutes affecting the jurisdiction of the circuit court need not all be embraced by one act. The thing required is that they shall be general laws only. It would hardly be claimed that an act creating an offense, fixing a penalty, and naming the court which should have jurisdiction of the prosecution, is violative of section 59 of the Constitution, as being a local act regulating the jurisdiction of the courts. The Constitution allows the establishment of police courts in the cities and towns of this Commonwealth (section 143), with jurisdiction in cases of violation of municipal ordinances and by-laws occurring within the corporate limits of the town, and criminal jurisdiction within the limits of the town as justices of the peace have. In providing these courts, it is competent for the Legislature to provide for appeals from their judgments, and to provide in what instances and to what courts the appeals will lie. It must be manifest that the final jurisdictions of these minor courts might well be differentiated for the same reasons that the cities are classified differently, so that, in providing a government for a city of any class, it is competent to provide for it a police court from whose judgments appeals in given instances will lie to the circuit court of the county. Nor is it at all necessary that all police courts in the State should have the same regulation in this respect. This section allowing appeals or prohibition to test the validity of municipal ordinances is really more of an incident in providing a city government, although it incidentally affects the jurisdiction of the courts

in the counties where such cities may be located. We regard the use of the words "Jefferson Circuit Court," in the section, as an inadvertence, growing out of drafting the bill from the old city charter. The same immaterial lapse is noticed in other places in the act. It should be ignored, as surplusage, rather than be suffered to defeat the clear purpose of the Legislature, as well as to invalidate an important right of the city and of its inhabitants. We construe this section to mean that either party—the city or the defendant—may prosecute an appeal to the circuit court of the county, where the penalty fixed by the ordinance is as much as $20. Upon such an appeal the case would be tried upon its merits *de novo*. But if the penalty be less than $20, either party, for the purpose of testing the validity of the ordinance, may go to the circuit court of the county—the defendant by prohibition, and the city by appeal. If, in a reclassification of the cities of the Commonwealth, another or others are added to the first class, this section would apply to them; the words "Jefferson Circuit Court" being read "circuit court of the county." We are of the opinion that the Jefferson Circuit Court, Criminal Division, had jurisdiction of these appeals.

3. The next proposition is: It is argued that the prosecution was improperly in the name of the city of Louisville. Appellees contend that, under the Constitution, the prosecutions must have been in the name of the Commonwealth of Kentucky. Section 123 of the Constitution is, in part: ". . . All prosecutions shall be carried on in the name and by the authority of the 'Commonwealth of Kentucky,' and conclude against the peace and dignity of the same." This identical language was used in all the previous Constitutions of this State. The word "prosecutions," as used in this section and in other sections, has been construed to

embrace only such transgressions as were at common law indictable offenses, or were punishable by imprisonment or other infamous mode. In Commonwealth v. Avery, 14 Bush, 625, 29 Am. Rep., 429, it was held that a statute imposing a fine for betting on an election was neither an indictable offense at the common law, nor was it visited with any infamous punishment by statute. It was then held that a penal action would lie to recover the fine, without an indictment having been found, and that it was not a "criminal prosecution," as contemplated by the use of the term in the Constitution. In Lowry v. Commonwealth (18 R., 481), 36 S. W., 1117, the appellant was arrested on a warrant, without indictment, and tried before a minor judicial officer, and convicted of a violation of the local option law. Answering his objection that he was being deprived of a constitutional right, in that he was being tried for an indictable offense upon information merely, the court said: "Misdemeanors created by statute, for which no infamous punishment is provided, may be tried in such manner as the Legislature shall provide." The Legislature, in granting the charter of the City of Lexington in 1842, authorized it to prosecute and recover in the name of the city, for all infractions of its ordinances. The city council passed an ordinance providing a punishment for breaches of the peace. In Williamson v. Commonwealth, 4 B. Mon., 146, the appellant had been convicted under the ordinance in a proceeding upon a warrant issued in the name of the city of Lexington. He contended that the act of the Legislature in attempting to confer authority upon the city to prosecute for offenses in the name of the city, as well as allowing the proceeding upon information without indictment, was violative of the Constitution. This court held that proceedings for offenses punishable by fine only are of

a quasi civil nature, and did not violate either of the provisions of the Constitution. This case has since been approved, and its doctrines applied, in allowing penal actions, without indictment, to recover for offenses where the only penalty was a fine. Commonwealth v. L. & N. R. Co. (18 R., 610), 37 S. W., 589; Harp v. Commonwealth (22 R., 1792), 61 S. W., 467; Commonwealth v. L. & N. R. Co., 80 Ky., 291, 3 R., 788, 44 Am. Rep., 475; Commonwealth v. Sherman, 85 Ky., 686, 9 R., 218, 4 S. W., 790; L. & N. R. Co. v. Commonwealth (23 R., 1900), 66 S. W., 505. These and similar constitutional guaranties of the citizen, like that of trial by jury, have been variously and frequently considered by the courts of last resort of many of the States. The weight of authority seems to be that such summary proceedings by municipal courts for the violations of municipal by-laws are not repugnant to these constitutional provisions. Dillon on Munic. Corp., secs. 433, 368; Smith, Modern Law of Munic. Corp., sec. 1353 *et seq.*, and cases there collected. The only question left under this head is, has the Legislature authorized the proceeding to be in the name of the city? Section 2917, Kentucky Statutes, 1899, being a part of the law governing cities of the first class, reads: "All fines and recoveries realized in said court, whether the prosecution be in the name of the city or commonwealth, shall be paid to the city treasurer as a contribution toward the expenses of said court." By section 2922, already quoted, appeals are allowed to either the city or the accused; clearly indicating that the city was to be one of the parties to the proceeding. Strictly, violations of municipal ordinances are not violations of laws of the Commonwealth. The municipality alone is concerned, and it properly ought to be, and has always been regarded in this State, by universal practice, so far as our attention has

been directed, as being the prosecutor. We conclude, therefore, that the correct practice is to style the prosecutions in the name of the city.

4. Probably the most important question is as to the power of the general council to pass ordinances to punish those acts which are offenses at the common law. Of course, the municipality has only such power in this respect as has been granted to it by the Legislature. The only grant to cities of the first class to pass such ordinances is contained in the following sections of the Kentucky Statutes of 1899:

"Sec. 2742. That the inhabitants of cities of the first class are hereby continued corporate by the name and style which they now bear, with power to govern themselves by such ordinances and resolutions for municipal purposes as they may deem proper, not to conflict with this act, nor the Constitution and laws of this State, nor of the United States."

"Sec. 2782. Ordinance Imposing Fine for Misdemeanor. The general council shall have power to pass ordinances imposing fines, not exceeding one hundred dollars, for any designated misdemeanor not provided for by the general laws of the Commonwealth; but in case where the General Statutes of the Commonwealth impose a fine not exceeding one hundred dollars such fine may be increased by ordinance.

"Sec. 2783. Power to Pass Ordinances not in Conflict with the Constitution and Statutes. The general council shall have power to pass, for the government of the city, any ordinance not in conflict with the Constitution of the United States, the Constitution of Kentucky, and the statutes thereof."

Appellee insists that the proper construction of these sections is that the general council is restricted by the par-

ticular language of section 2782 to passing ordinances mak-
ing unlawful within the city only those things which at
common law were not offenses, or which have been made
such by statute; that the operation of a poolroom (that is,
a place where betting on horse races was habitually in-
dulged) was at common law a nuisance, and, being unprovided
for by any statute of this State, it was beyond the power
of the general council to legislate with reference thereto.
We think there has been a total misconception of the pur-
pose and scope of this section of the statute. In the first
place, the cardinal test must be the legislative intention
in enacting the sections. We must presume that that body
intended to vest in the local legislative board of the largest
city in the State at least as much power with respect to
passing by-laws for the police regulation of its inhabitants,
and for the conservation of the morals and welfare of that
population, as was given to the lesser towns and cities. In
all the others, specific authority is granted to them to pass
by-laws to suppress and punish nuisances. In defining the
powers of the legislative bodies of all the other municipali-
ties, they are minutely given, with reference to enumerated
specific subjects. In the grant to cities of the first class
there is an entire absence of such careful restriction. This
alone, in view of the ample general terms employed, would
seem to indicate that the powers granted the first-class
cities over such subjects were broader and more compre-
hensive than those granted the others. But however that
may be, we think that section 2782 was not enacted to re-
strict the general council's powers in defining what should
be offenses within the city, but was intended solely to de-
fine its authority in prescribing the limits of punishment
for such matters as were made offenses by ordinance. Sec-
tion 168 of the recent Constitution had for the first time

in this State placed a constitutional restriction upon the power of all municipalities as to the extent of punishment to be inflicted by the city where the same act was an offense against the Commonwealth, punishment for which was fixed by statute. That section is as follows: "No municipal ordinance shall fix a penalty for a violation thereof at less than that imposed by statute for the same offense. A conviction or acquittal under either shall constitute a bar to another prosecution for the same offense." The purpose of this statute (section 2782) was to apply section 168 of the Constitution. It allowed the city to punish the same act that was by statute a misdemeanor by the penal laws of the State. But it required the council to fix the same penalty as the statute did, where the penalty was $100 fine. Where the statutory penalty was less than $100 fine, the municipality might impose a higher penalty up to $100, for an infraction of its ordinance. Where no penalty was fixed by statute, the municipality was at liberty to fix such penalty as it deemed proper, not exceeding $100. The only other limitation on this power was that found in the succeeding section (Ky. St., 1899, sec. 2783), which was that the ordinance should not be in conflict with the Constitution or statutes of the United States or of this State. That such is the correct meaning of these sections, we think, is made plain by opinions of this court in City of Owensboro v. Simms, 99 Ky., 49, 17 R., 1393, 34 S. W., 1085, and Respass v. Commonwealth, 107 Ky., 139, 21 R., 789, 53 S. W., 24. In the Respass case the city of Covington had by ordinance fixed a penalty for operating poolrooms within the city. A conviction in the police court was interposed as a bar to an indictment for the same offense in the circuit court. It was denied. This court held that section 168 of the Constitution limited the power of the municipalities as to fixing penalties to those

cases only where a penalty for the same act was fixed by statute, and that as operating poolrooms was not a statutory offense in this State, but one punishable at common law only, the section of the Constitution did not apply, and the punishment by the ordinance was held not to be a bar to a prosecution for the same offense by the State. The exercise of police power by the State, or as delegated by it to its municipalities, is an essential and inalienable attribute of sovereignty and government. It is at the very bottom of all social government, and, while jealously scrutinized in its application, lest the rights of the citizen be arbitrarily encroached upon under its guise, yet its existence never has been and never can be denied. The rights of persons in conducting their business or using their property are subordinate to this power. The regulation of commerce between the States by the Federal government likewise yields to its legitimate application. Cooley, Const. Law, 709; Patterson v. Commonwealth, 11 Bush, 312, 21 Am. Rep., 220, affirmed on appeal to the Supreme Court, 97 U. S., 501, 24 L. Ed., 1115; Moore v. Illinois, 14 How., 13, 14 L. Ed., 306; Chicago, &c., R. Co. v. Fuller, 17 Wall., 560, 21 L. Ed., 710; Passenger Cases, 7 How., 283, 12 L. Ed., 702; Morgan Steamship Co. v. Louisiana Board of Health, 118 U. S., 455, 6 Sup. Ct., 1114, 30 L. Ed., 237. Of its general nature, a comprehensive definition is given by Jeremy Bentham, in his General View of Public Offenses (Edinborough Ed. of Works), pt. 9, p. 157, in part, thus: "Police is in general a system of precaution, either for the prevention of crimes or of calamities." "Laws and regulations necessary for the protection of the health, morals, and safety of society are strictly within the legitimate exercise of the police powers." Smith, Munic. Corp., 1319. "Municipal corporations have exercised the police power *eo nomine* for

time out of mind, by making regulations to preserve order, etc., . . . and this power of local legislation may be conferred upon the smallest village that the Legislature sees fit to incorporate, as well as upon the largest city in the State." Id., 1320, 1321. The strife generally is over the question whether the particular business or use of property prohibited by the act or ordinance is within the proper exercise of that power. We will not go further into the subject than its application to the particular matter embraced by the ordinance under examination. Tiedman on Limitations of Police Power (a very conservative treatise upon the subject) declares that (sections 99-102) when parties "pursue gambling as a business, and set up a gambling house, like all others who make a trade of vice, they may be prohibited and subjected to severe penalties." In California, under the police power delegated generally by the Constitution to the cities and counties, it was held in *Ex parte* Tuttle, 91 Cal., 589, 27 Pac., 933, that the municipality of San Francisco could lawfully provide a penalty against pool-selling on horse races committed within the city, although there was no statute of the State on the subject. The same was held in Georgia in Odell v. City of Atlanta, 97 Ga., 670, 25 S. E., 173. In that case it was said: "We are not aware of any statute of this State which makes the carrying on of this so-called business penal, and it is therefore strictly within the purview of municipal legislation. Under the general welfare clause of the charter of the city of Atlanta, the mayor and council had authority to pass the ordinance of which the plaintiff in error complains. That ordinance forbade, under a penalty, the keeping or maintenance of any office or place of business in the city in which any persons were allowed to bet on horse races or any other kind of races, whether run within the city or outside of its limits.

We think it was perfectly lawful and proper both to adopt and enforce an ordinance of this kind." Indeed, it would seem that citation of authority that the State or a municipality may lawfully prohibit gambling as a proper exercise of police power, is unnecessary in this day and time.

5. This brings us to the consideration of appellees' next contention, which is, does the title of the ordinance sufficiently indicate the subjects treated therein, and does the ordinance embrace more than one subject? Section 2777, Kentucky Statutes, 1899, on this subject, reads: "No ordinance shall embrace more than one subject, and that shall be expressed in its title."

The ordinance in question is as follows:

"An Ordinance to Prevent the Operation of Poolrooms in the City of Louisville.

"Be it ordained by the general council of the City of Louisville:

"Section 1. That it shall be unlawful for any person, firm or corporation to establish, set up, maintain, keep or operate, or conduct in the city of Louisville a poolroom, or what is commonly called 'poolroom,' wherein or whereat any money or other thing of value shall be or can be bet, won, or lost on the result of any horse race or races, run or to be run in or our of the city of Louisville, or wherein or whereat any money or other thing of value shall be received or paid for any ticket, lot, pool, or chance on the result of any such horse race or races run or to be run in or out of the city of Louisville; and any person, firm, or corporation that shall violate any provision of this section shall, on conviction, be fined one hundred dollars for each offense; and each day such poolroom is thus maintained, kept, operated, or conducted shall constitute a separate offense.

"Sec. 2.  That it shall be unlawful for any person to aid, abet, or assist any other person or corporation, or to act as the agent or employe of any other person or corporation in establishing, setting up, maintaining, keeping, operating, or conducting any such poolroom as is defined in section 1 of this ordinance; and any person who shall violate any provision of this section shall, on conviction, be fined in any sum not less than twenty-five nor more than one hundred dollars for each offense; and each day any person shall thus aid, abet, or assist in maintaining, keeping, operating, or conducting such a poolroom, or shall act as agent or employe of any person or corporation in maintaining, keeping, operating, or conducting such a poolroom, shall constitute a separate offense.

"Sec. 3.  That it shall be unlawful for any person, firm, or corporation, either as owner or agent, to let, lease, or rent to any other person, firm, or corporation any room, house, or building to be used or occupied as a poolroom, or for any of the purposes defined in section 1 of this ordinance; or as owner or agent, to permit any room, house, or building to be so used or occupied, after receiving notice thereof; and any person, firm, or corporation that shall violate any provision of this section shall, on conviction, be fined in any sum not less than fifty dollars nor more than one hundred dollars for each offense, and each day such room, house, or building shall be so used or occupied shall constitute a separate offense.

"Sec. 4.  That it shall be unlawful for any telegraph, telephone, or messenger company, or any officer, agent, messenger, or employe thereof, to furnish, deliver, or communicate to any owner, proprietor, agent, or employe of any poolroom maintained, kept, operated, or conducted in the

city of Louisville for any of the purposes defined in section
1 of this ordinance, any message, communication, or infor-
mation, to be used at such a poolroom as is defined in sec-
tion 1 of this ordinance, concerning any horse race or races
in or out of the city of Louisville; and any company, per-
son, firm, or corporation that shall violate any provision of
this section shall, on conviction, be fined in any sum not
less than twenty-five dollars nor more than one hundred
dollars for each offense, and each message or communica-
tion so furnished, or delivered, or communicated, shall con-
stitute a separate offense.

"Sec. 5. That it shall be unlawful for any person to buy
or to have in his possession any ticket, lot, pool, or chance
in or of any such poolroom as is defined in section 1 of this
ordinance, on any horse race or races ran or to be run in
or out of the city of Louisville; and any person who shall
violate any provision of this section shall, on conviction,
be fined in any sum not less than five dollars nor more than
fifty dollars for each offense.

"Sec. 6. That it shall be the duty of the board of public
safety, and each member of said board, to suppress all such
poolrooms as are defined in section 1 of this ordinance, and
by and through the police force to faithfully execute all
the provisions of this ordinance; and it shall be the duty of
the chief of police and each member of the police force of
the city of Louisville to detect and arrest all violators of
any provision of this ordinance, and any wilful failure or
refusal to do so by any officer, patrolman, or detective on
the police force shall subject him to a fine of not less than
fifty dollars nor more than one hundred dollars for each of-
fense, and on conviction for such offense in the police court
of the city of Louisville, it shall be the duty of said board,
after notice to and trial of such convicted member of the

police department, to dismiss him from further service therein, and to not thereafter appoint him to any position in said department, or place him on the pay rolls thereof.

"Sec. 7. That any member of the board of public safety who shall wilfully fail or refuse to execute any provisions of this ordinance, or to join with any other member of said board in executing the same, or who shall wilfully fail or refuse to dismiss or to join with any other member of said board in dismissing from further service in the police department any member thereof who shall have been convicted in the police court of the city of Louisville of violating any provision of this ordinance, or any member of said board who shall appoint or join any other member of said board in appointing any such convicted member of the police department to any position therein, or who shall place, or join with any other member of said board in placing, any such convicted member of the police department on the pay rolls thereof, shall, on conviction, be fined one hundred dollars for each offense

"Sec. 8. That all other ordinances or parts of ordinances in conflict or inconsistent with this ordinance are hereby repealed.

"Sec. 9. That this ordinance shall take effect and be in force from and after its passage.

"Approved February 14, 1901."

Appellees' criticism of this act is that it embraces a number of different offenses. We fail to see that that puts the ordinance in conflict with the section of the statute. The statute is that the ordinance shall embrace but one subject. In order to effectuate the object of this ordinance, which is covered by the one subject, viz., "to prevent the operation of poolrooms in Louisville," it may be necessary to deal with more than one feature of the subject. This is

frequently so.  In construing a similar constitutional pro-
vision (section 51), this court has had occasion to pass upon
the subject of the sufficiency of the title.  It has always
been held that if the various provisions of the act all re-
late to, and are germane to, the subject expressed in the
title, the requirement is satisfied.  Collins v. Henderson,
11 Bush, 74; Commonwealth v. Bailey, 81 Ky., 395, 3 R.,
110; Burnside v. Lincoln Co., 86 Ky., 423, 9 R., 635, 6 S.
W., 276.  The latest utterance of this court on that subject
is the case of Weber v. Commonwealth, 24 R., 1726, 72
S. W., 30.  The title of the act involved in that case was,
in substance, the better preservation of the peace, and the
suppression of mobs and other unlawful confederations.
The first section of the act (Acts 1897, p. 29, c. 20) provided
against persons banding themselves together for the pur-
pose of injuring or disturbing another; the second, against
those banding themselves together for the purpose of injur-
ing property; the sixth, against those who send out intim-
idating or threatening letters.  It was held that all the
parts of the act related to the one subject named.  A very
similar question to the one under discussion came before
the Supreme Court of Appeals of Virginia in the case of
*Ex parte* Lacy, 24 S. E., 930, 31 L. R. A., 825, 57 Am. St.
Rep., 795.  The same point was made as to the title of the
act of the Virginia Legislature, which was as follows:  "An
act to prevent pool selling, and so forth, upon the results
of any trials of speed of any animals or beasts taking place
without the limits of the Commonwealth."  Acts 1895-96,
p. 576, c. 539.  The Virginia Constitution (art. 5, sec. 15)
declared "that no law shall embrace more than one subject,
which shall be expressed in its title."  The court, on this
point, observed:  "We do not consider the act as obnoxious
to that part of the clause or the Constitution just quoted,

which says that 'no law shall embrace more than one sub-
ject.' The object of this law is the suppression of gambling,
or that form of gambling where the bet or wager is made
upon the speed or endurance or skill of animals or beasts,
for, as was said in Ingles v. Straus, 91 Va., 209, 21 S. E.,
490, 'if the subjects embraced by the act, but not specified
in the title, have congruity or natural connection with the
subject stated in the title or are cognate or germane there-
to, the requirement of the Constitution is satisfied. . . .'
The Constitution, moreover, is to be construed so as to
uphold the law, if practicable. All that is required by the
constitutional provision is that the subjects embraced in
the statute, but not specified in the title, shall be congru-
ous, and have natural connection with, or be germane to,
the subject expressed in the title. Commonwealth v.
Brown, 91 Va., 762, 21 S. E., 357, 28 L. R. A., 110." Every
provision of this ordinance looks to the prevention of the
operation of poolrooms in the city of Louisville. The great
purpose of the act is to suppress that form of gambling
known as "pool-selling." To do this the general council has
struck at the operation of the poolrooms, as the most cer-
tain remedy. To prevent their operation, five classes of
persons who are known to contribute thereto are brought
within the terms of the ordinance, viz.: (1) The operator of
the poolroom; (2) his servants or employes engaged in op-
erating it; (3) the owner or controlling agent of the build-
ing or lot, who knowingly lets it or knowingly suffers it
to be used for that purpose; (4) the telegraph, telephone,
or messenger company, who, as carrier of messages, know-
ingly, and for the purpose of enabling the selling of pools,
transmits or delivers messages to such operator, to be used
at the poolroom, and (5) the person who buys or has the pos-
session of the ticket of any pool, issued or to be redeemed

by any poolroom operator in the city of Louisville. To
reach any one of these classes, tends to "prevent the opera-
tion of poolrooms in the city of Louisville." To reach and
restrain them all, effectually accomplishes the object of the
ordinance. The title of the ordinance fairly and compre-
hensively embraces every phase of the subject treated of
in its several sections, and is not repugnant to the stat-
utes.

6. For appellee Smith, manager of the Western Union
Telegraph Company, it is insisted that this ordinance is
invalid because it is—so it is argued—an arbitrary and un-
authorized interference with a legitimate business, to-wit,
the contract and duty of a common carrier of messages to
deliver the messages according to its contract. Counsel
insist that an enforcement of section 4 of the ordinance is
invalid, because: "(1) The prohibition is not limited to
messages to be used in the business or operation of the
poolroom. They may be entirely foreign to such business
and operation, and still be a violation of the ordinance.
(2) The message may be addressed to and delivered at a
place separate from, and having no connection with, the
poolroom. (3) The defendant may be guilty, under the or-
dinance, although he may not know the contents of the
message. He may not know that it is to be used at a pool-
room. He may not even know that the addressee is the
owner or proprietor or agent or employe of a poolroom."
No such construction of the ordinance is contended for by
the city, nor do we believe that it is fairly susceptible of it.
The messages which the telegraph and telephone com-
panies and their employes are prohibited from delivering
are those messages only that are communications "to any
owner, proprietor, agent, or employe of any poolroom main-
tained, kept, operated, or conducted in the city of Louis-

ville for any of the purposes defined in section 1 of this ordinance, any message, communication, or information to be used at such a poolroom as is defined in section 1 of this ordinance, concerning any horse race or races in or out of the city of Louisville." The message must contain matter which on its face shows it is to be used in the operation of a poolroom in Louisville by furnishing information concerning horse races that would enable the operator of the poolroom to make or sell pools or chances based upon such information, or the knowledge of such purpose must be otherwise established; and it must be shown that the message was delivered to such poolroom operator, or his agent, with knowledge of the purpose that it is to be used in making bets or selling pools on the information contained in the message. The telegraph company or its agents handling the message must be shown to have guilty knowledge that it is to be so used. Messages not concerning horseracing and to further the pool-selling business are not affected by the ordinance.

It is not argued that the ordinance is invalid, as to this appellee, on any other ground than above named. The case of Commonwealth v. Western Union Telegraph Company (112 Ky., 355, 23 R., 1633), 67 S. W., 59, 57 L. R. A., 614, is relied on by appellee as sustaining this position. The question involved and decided in that case was whether a telegraph company that delivers such messages to an operator of a poolroom was guilty of the common-law offense of maintaining a nuisance. The court held: (1) "At common law a gaming house is a nuisance. It is detrimental to the public, because it promotes cheating and other corrupt practices. It encourages idleness and excites the desire to obtain money in an improper way. Persons who are in the occupation and control of such houses are guilty of

maintaining a common nuisance." And (2) that a telegraph company who merely furnished messages to the proprietors of the gambling house were not "in control" or "occupation" of such house; that it was never, at common law, a nuisance to furnish such messages. Beyond that the court was not called upon to, and did not, decide. Certain expressions used in the opinion by way of illustration or argument seem to have misled counsel. For example, the court cited section 1346, Kentucky Statutes, 1899, which punishes telegraph companies by fine for corruptly or wilfully, or for any other improper motive, failing to deliver a message. The whole section is as follows: "If any agent, officer or manager of a telegraph or telephone line in this State, or other person, shall knowingly transmit, on or through the same, any false communication or intelligence with intention to injure any one, or to speculate on any article of merchandise, commerce or trade, or with intent that another may do so; or if any agent, officer, or manager of a telegraph or telephone line from corrupt or improper motives, or wilful negligence, shall withhold the transmission or delivery of messages or intelligence, for which the customary charges have been paid or tendered, he shall be fined not less than ten nor more than five hundred dollars." This section aimed at three things: (1) To punish a telegraph operator, or any one else, who knowingly sent false messages with intention to injure another; (2) to punish the operator or other person who transmits such telegraphic or telephone message for the purposes of speculation in articles of merchandise and commerce, and (3) to punish the operator who corruptly or by wilful negligence failed to deliver a message. Judge Paynter, in the opinion in Commonwealth v. Western Union Telegraph Company, *supra*, commenting upon the last-mentioned fea-

ture of the statute, observed: "If a person desires to transmit a message over a telegraph line, if it is couched in decent language, it is the duty of the company to receive and transmit it upon the tender or payment of the customary charges for such services." Counsel for appellee construe this language to mean that a telegraph company is bound to, and therefore, of course, may voluntarily, accept and transmit any message couched in decent language, upon payment of customary charges. The same section expressly prohibits the transmission of two classes of messages, without regard to the absence or presence of terms that might shock the modesty, viz., false messages intended to injure another, and those for speculation upon the state of the markets. Of course, the opinion did not mean to hold that the last annulled the first two provisions of the statute. Nor did the court intend to subscribe to the doctrine that any one, whether a common carrier or not, could be compelled to do an unlawful act, or to become a party to an immoral one. The court did not intend to overrule the case of Smith v. Western Union Tel. Co., 84 Ky., 665, 8 R., 672, 2 S. W., 483, nor to depart from the principles therein announced. It was held in that case that a telegraph company would not be compelled by injunction to furnish service to one who purposed using it in gambling transactions with his customers. In the case of Com. v. W. U. T. Co., *supra*, the court merely announced that if the telegraph company did furnish such service, it was not an indictable offense at the common law. Since the decision in the Smith case, *supra*, section 1346, Kentucky Statutes, has made it an indictable offense for a telegraph company to furnish the character of information therein mentioned, viz., bucketshop quotations. It would be neither courteous nor fair to the legislative branch of the State government to impute

to it, in construing one of its statutes, a purpose to encourage crime and foster immorality; to say that it had in mind the compulsion of acts by its citizens which had but the sole object of perpetrating other acts which in every enlightened jurisdiction are deemed vicious and degrading. To hold that the statute being considered compelled the transmission of messages by the telegraph company, known to be designed for purposes of gambling within this Commonwealth, would be to convict the Legislature of favoring the vice of gambling. On the contrary, the true rule of interpretation is that the purpose of the Legislature in passing such act will be presumed to be in harmony with the general public policy, evidenced by innumerable statutes against gambling in almost every conceivable form. A telegraph company, at common law, might become liable for the transmission of a libel, where the matter conveyed information of its nature. Whitfield v. S. E. R. Co., 1 El. B. & El., 115; Peterson v. W. U. T. Co., 72 Minn., 41, 74 N. W., 1022, 40 L. R. A., 661, 71 Am. St. Rep., 461; Monson v. Lathrop, 96 Wis., 386, 71 N. W., 596, 65 Am. St. Rep., 54; Archambault v. Great Northwestern Tel. Co., 4 Montreal, Q. B., 122. So a common carrier of messages is bound to transmit all messages upon payment of customary charges, when couched in decent terms, and which it is not prohibited by law from carrying, or which, if delivered, would not subject it to indictment or to an action for damages, or which are not intended for treasonable, unlawful, or immoral purposes, known to the carrier. The words, "if couched in decent language," used in Commonwealth v. W. U. T. Co., *supra*, are not in the statute, yet they are properly read into it, as should be the terms above used, for the policy of the law will not discriminate merely in the exclusion of

City of Louisville v. Wehmhoff, &c.

words which might offend the sensibilities, yet allow matter obviously vicious and detrimental to society. State of Alabama v. Stripling (Ala.), 21 South., 409, 36 L. R. A., 81; Gray on Telegraphs, sec. 15; Melchert v. American Union Tel. Co. (C. C.), 11 Fed., 193; Bryant v. W. U. Tel. Co. (C. C.), 17 Fed., 825; Cothran v. W. U. Tel. Co., 83 Ga., 25, 9 S. E., 836. As said in the Smith case, *supra*, "Of course, a telegraph company, in assuming to refuse to send a message because it is illegal or immoral, acts upon its peril." Or as was observed in Gray v. Western Union Tel. Co., 87 Ga., 350, 13 S. E., 562, 14 L. R. A., 95, 27 Am. St. Rep., 259: "When a dispatch is ambiguous, the law would give the benefit of the ambiguity to the company dealing with it, either civilly or criminally, for transmitting the dispatch; and hence it would be the duty of the company, in deciding whether to transmit or not, to give the benefit of the doubt to the sender." But however the matter may be regarded in other respects, it is left, in this State, so far as the State policy is concerned, to the discretion of the telegraph company whether it will receive and transmit messages concerning gambling transactions, other than gambling in "futures." It was competent, then, for the general council of Louisville, in the exercise of that police power delegated to it by the State, to punish the willful transmission of messages furnished to known gambling establishments for the purpose of enabling them and their customers to make bets or lay wagers on horse races. The telegraph company, whether or not it has a conscience, has a duty. It it claimed that this duty is only to serve the public. Not so. Its first duty is to obey the laws, just like other people. The public can not demand a service which in and of itself involves a violation of the law. The ordinance is a clear exercise of police power, and not an improper one.

KENTUCKY REPORTS. [Vol. 116

City of Louisville v. Wehmhoff, &c.

7. The final contention of appellees is that the warrants
in question are too indefinite, and fail to state any charge
against any of appellees. By the warrants the defendants
were summoned to show cause why they should not be
fined "for violating ordinance to prevent the operation of
poolrooms in the city of Louisville." It is complain-
ed that no acts are charged. There may be as many
as five different offenses under this ordinance. The war-
rants in these cases do not describe any one of the offenses.
In the recent case of Commonwealth v. Leak (decided Oct.
23, 1903), 116 Ky., 540, 25 R., 761, 76 S. W., 368, it was
held: "The same technical strictness is not required in a
proceeding by warrant as by indictment, and ordinarily
a warrant in the form prescribed by the Code sufficiently
describes the offense; but, if made to appear to the satis-
faction of the court that a defendant can not intelligently
make defense, it should be made more specific." In Com-
monwealth v. Robert Van Meter (M. S. opinion by Judge
Cofer, decided in 1876), this court held that a warrant is-
sued in a misdemeanor case, not requiring an indictment,
could be amended, when it was not sufficiently specific, and
that the amendment could be made in the circuit court
after the appeal there, inasmuch as it would not have
changed the prosecution. In these cases the warrants can
be amended on their return to the circuit court, if demanded
by appellees, so as to apprise them as to which sections of
the ordinance they are charged with having violated. But
it was error to have dismissed the warrants.

The judgments are reversed, and causes remanded to the
circuit court for trial under proceedings not inconsistent
herewith.

Whole court sitting.

Judge O'Rear's response to a petition for a rehearing.

Aside from repetitions of arguments made on the original hearing of the case, and which we deem to have been disposed of by the opinion heretofore delivered in these cases, appellees have presented certain criticisms of the opinion, and additional reasons against the reversal, which ought to be noticed.

It is complained that the ordinance being considered is void because it violates section 168 of the Constitution, in this: That it provides less penalties than are fixed by statute for the same offense. It was argued before that the offense created by the ordinance was not an offense at all, either at the common law or by statute. The apparent inconsistency of the arguments will not estop counsel from relying on the true one, if either is sound. It is claimed that pool-selling is a game such as is embraced by section 1960, Kentucky Statutes, 1903, for which a penalty of $500 fine and confinement in the penitentiary, and disqualification from suffrage and office holding, is fixed. That section applies alone to the setting up and operation of a faro bank, keno bank, "or other machine and contrivance used in betting whereby money or other thing may be won or lost," and to whoever shall for commission or compensation set up, operate, or conduct a game of cards, oontz, or craps, whereby money or other thing may be won or lost, and to aiders and assisters. This argument is based upon the claim that the ordinance is broad enough in terms to include what is known as "French pools," and that as it was decided by this court in Commonwealth v. Simonds, 79 Ky., 618, 3 R., 380, that the selling of French pools or Paris mutuals on horse races is a felony, under section 1960, Kentucky Statutes, 1903, therefore the ordinance fixes a less

penalty for selling French pools than the statute does. French pool or Paris mutual is a "machine or contrivance used in betting," as is shown by its description in Commonwealth v. Simonds, *supra*. Furthermore, section 1961, Kentucky Statutes, 1903, indicates that it was so regarded by the Legislature. For in that section it is said that the change of the name of the games or contrivances "mentioned or included in the preceding section shall not prevent the conviction of any person violating the provisions thereof. . . Nor shall its provisions apply to persons who sell combination or French pools on any regular race track during the races thereon." In French pool the operator of the machine does not bet at all. He merely conducts a game, which is played by the use of a certain machine, the effect of which is that all who buy pools on a given race bet as among themselves; the wagers of all constituting a pool going to the winner or winners. The operator receives 5 per cent. of the wagers as his commission. But in selling ordinary pools on horse races the seller does not operate a "machine or contrivance used in betting." Neither does he bet on a horse race. Such was the express decision of this court in Cheek v. Commonwealth, 79 Ky., 359, 2 R., 339. Therefore, as said by the court in that opinion, "there is no express statutory penalty against the specific act of selling pools." In that opinion the other statute refered to by counsel (what is now section 1960) was referred to, and held not to include pool selling, while French pool was held by the court in the Simonds case, *supra*, to be under that statute. But, even if the ordinance was broad enough to include French pools, it would be void only as to that class of pool selling, leaving it valid in all other particulars, including the penaties affixed to the acts of having tickets in possession, and knowingly furnishing telegraphic

or telephone messages to the operators, etc., with the intention or knowledge that they are to be used to further the business of pool-selling in the city of Louisville.

Section 1978, Kentucky Statutes, 1903, fixes a penalty of $200 to $500 against "whoever shall suffer any game whatever at which money or property is bet, won or lost, in any house, or on premises in his occupation." It is claimed that the act of pool-selling, or at least the betting by the buyers of the pools, is a game. Both these contentions were decided adversely to appellees' present version in Cheek's case, *supra*, where the court said: "Appellant could not be convicted under an indictment for the statutory offense of betting at a game or wager, first, because he did not bet or wager anything; and, second, because betting on a horse race, although punishable under a statute against wagering, is not 'gaming.' "

The other criticism of appellees other than the Western Union Telegraph Company's manager do not appear to us to be material, as affecting their rights under the ordinance.

The very earnest petition for rehearing filed by the Western Union Telegraph Company for its manager, Smith, relies, as new matter, upon the argument that the ordinance must be held void because it is regulation of interstate commerce, and is therefore repugnant to the Federal Constitution. We are not aware that the Congress has ever legislated upon the subject-matter covered by this ordinance. It is conceded that the business of the Western Union Telegraph Company in carrying messages between persons of different States is interstate commerce. While the Supreme Court has frequently had before it the question of the power of a State to enact legislation regulating, or having the effect to regulate commerce between the

States, it has not decided the precise point here presented. Nor can any general rule be deduced from the numerous decisions of that court that can be said to be conclusive of the question now presented. It is not for a moment thought that the ordinance in question was intended as a regulation of commerce between the States, or as a regulation of commerce at all. If it operates in that way, it is merely incidentally. The ordinance is an exercise of the State's police power. That the States may, in the exercise of that power, in certain instances, pass laws that incidentally affect commerce among the States, has been upheld. Plumley v. Massachusetts, 155 U. S., 461, 15 Sup. Ct., 154, 39 L. Ed., 223; Austin v. Tennessee, 179 U. S., 343, 21 Sup. Ct., 132, 45 L. Ed., 224; Western Union Tel. Co. v. James, 162 U. S., 650, 16 Sup. Ct., 934, 40 L. Ed., 1105; Patterson v. Kentucky, 97 U. S., 501, 24 L. Ed., 1115; Stone v. Mississippi, 101 U. S., 814, 25 L. Ed., 1079. It would be an extraordinarily unfortunate condition of it were otherwise. We should imagine that a rightful exercise of this power would be found in State laws prohibiting the importation from another State of diseased or infected cattle or persons, or impure food, and the like. Here the thing prohibited is the transmission to a poolroom operator in the city of Louisville of messages intended for use and to be used—in a vicious enterprise. Their use is that of gambling, and is universally held in this country to be immoral, degrading, and injurious to society. Such use can not have any legitimate purpose. The business of furnishing such messages, known to be intended solely for such use, makes the carrier essentially a partner in that offense. Its part of the profits of the business is its tolls for carrying the messages. The poolroom operator's part is a toll or percentage on the volume of business. It must be profitable to both, or it

would not be kept up. The carrier wants us to say that its part in this unlawful partnership to violate the moral and statute laws of a community is protected by the Federal Constitution. As was said by one of the courts, the Constitution, at most, gives the Congress exclusive jurisdiction to regulate interstate commerce, not interstate crime. The liquor cases are cited by appellees as holding a contrary doctrine to this court's position. We do not understand that they do. Traffic in liquor is not illegal or immoral *per se.* On the contrary, it is generally recognized as being a legal business, and is licensed as such. Consequently the transmission of such commodities by freight from one State to another has been held to be a matter not subject to the prohibitive control of any of the States. But wagering bets on horse races can not be an article of commerce, no more than could be a lottery business. Both are *per se* immoral and deleterious to society, and clearly within the power of the States to prohibit. It could never have been contemplated by the framers of the Federal Constitution that the hands of the States were to be tied so that they could not protect themselves from such vices if one of the participants chanced to use an interstate vehicle of commerce for carrying on the business.

The petitions are overruled.